NATIONWIDE MUTUAL INSURANCE COMPANY ET AL., APPELLANTS AND
CROSS-APPELLEES, *v.* MARSH ET AL., APPELLEES AND
CROSS-APPELLANTS; FALBO, APPELLANT AND CROSS-APPELLEE.

[Cite as Nationwide Mut. Ins. Co. *v.* Marsh (1984), 15 Ohio St. 3d 107.]

(No. 84-180—Decided December 31, 1984.)

*Messrs. Arter & Hadden, Mr. Hugh M. Stanley, Jr.,* and *Mr. Eric H. Zagrans,* for appellants and cross-appellees.

*Shane, Caravona & Summers Co., L.P.A., Mr. Michael Shane* and *Mr. James E. Behrens,* for appellees and cross-appellants.

*Per Curiam.* The issue presented in this appeal is whether the court of appeals erred in reversing the trial court's granting of partial summary judgment for appellants and remanding the cause for resolution of a factual issue. For the reasons that follow, this court modifies and affirms the judgment of the court of appeals.

It is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature. *Ohio Farmers Ins. Co.* v. *Cochran* (1922), 104 Ohio St. 427. Therefore, the terms of the policy must be mutually agreed-upon to be effective, in accordance with contract principles.

Appellants argue in the case at bar that Endorsement 1604 is *always* included in a policy which provides for uninsured motorists coverage in excess of the statutory minimum set forth in R.C. 4509.20(A), and thus appellees are bound by virtue of the request for such coverage. Appellees argue that the endorsement is not part of the contract since no mention of it was made at the inception of the contract, nor was any reference made to it on the application form.

Appellants' argument is without merit. The fact that Endorsement 1604 is included without exception in "full coverage" policies such as this is no substitute for consent on the part of the policyholder unless there was a "meeting of the minds" as to its inclusion. This is basic contract law.

It is evident from the record that Endorsement 1604 was never discussed by the parties at the time the policy was purchased. Appellants do not dispute this fact. Therefore, this court finds as a matter of law that Endorsement 1604 was not a part of the Stornse policy.

The court of appeals herein remanded the case for resolution of the issue of whether the endorsement was ever physically received by Stornse, the policyholder. We agree with both parties that this is not a genuine issue of material fact. Rather, partial summary judgment should be granted to appellees since no genuine issue of fact exists as to the applicability of Endorsement 1604 and appellees are entitled to judgment as a matter of law.

Certain other propositions of law are set forth by the parties regarding the legality of these endorsements. In that the endorsement is found not to be a part of the Stornse policy, these issues are not ripe for review.

Accordingly, this court affirms and modifies the judgment of the court of appeals by granting partial summary judgment to appellees.

*Judgment modified
and affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur separately.

HOLMES, J., dissents.

SWEENEY, J., concurring. Although I agree with the analysis of the majority in determining that the judgment of the court of appeals should be modified and affirmed, the majority failed to address the issue stated below.

The majority finds that summary judgment in the instant case was improper, because, as a matter of law, Endorsement 1604 was not a bargained-for part of the insurance contract in question. The majority then declines to address "[c]ertain other propositions of law" presented by this appeal. I strongly believe, however, that one of these "certain other propositions of law" is, in fact, the central issue before us in this case; and, because resolution of this issue would be equally dispositive of the case in its entirety, I would decide this case by addressing this "other" issue.

The issue to which I refer was raised on cross-appeal by the appellees and is properly before this court. The appellees assert that regardless of the applicability of Endorsement 1604 to the policy in question, the endorsement's terms cannot be given effect because they are in contravention of public policy and/or unconscionable. As set forth in footnote 1, above, the arbitration clause of Endorsement 1604 allows either Nationwide or the insured to demand a trial if arbitration results in an award that exceeds the minimum limits of the state financial responsibility laws. In Ohio, these minimum limits require coverage of $12,500 per person and $25,000 per accident.[3]

The effect of Endorsement 1604 is to create binding arbitration for awards below the $12,500/$25,000 statutory coverage minimums and to create non-binding arbitration for awards in excess of those minimums. Nationwide asserts that the foregoing arbitration agreement is entirely fair because *both* the insured and Nationwide have the right to avoid an arbitration award in excess of $12,500/$25,000. This "facial equality" is not a true equality, however, because both parties are bound only by low awards, which are likely to be in Nationwide's favor. High awards can be avoided by either the insured or Nationwide, but it is unlikely that an insured would ever seek to avoid a high award, even if he was unsatisfied with it, because by avoiding the award and seeking a trial the insured would incur additional legal expense while also placing at risk the entire award that he already has received.

Thus, the real impact and effect of Endorsement 1604 is to give Nationwide the power to avoid high arbitration awards, regardless of whether those awards are fair and just. It would appear, therefore, that Endorsement 1604 makes known to insureds or claimants that Nationwide

---

[3] See fn. 2, *supra.*

has "a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration." Such a policy is in direct violation of Ohio Adm. Code 3901-1-07(C)(8).

Further, as we held in *State, ex rel. Adams,* v. *Gusweiler* (1972), 30 Ohio St. 2d 326 [59 O.O.2d 387], parties cannot agree to "binding" arbitration and later seek to treat such arbitration as "non-binding." Pursuant to Endorsement 1604, Nationwide agreed to "binding" arbitration so long as the amount of the arbitrator's award is $12,500 or less. Upon an award of $12,501, however, Nationwide can suddenly treat the *entire* award, even that amount below $12,500, as being "non-binding." This result is contrary to our holding in *Gusweiler* and should not be enforced by the courts of this state.

Finally, R.C. 2711.01 *et seq.* provides the statutory framework for the enforcement of contractual arbitration clauses. This statutory framework evinces a strong public policy in favor of final and binding arbitration, and it places limits upon the power of the judiciary to modify an arbitrator's award. Endorsement 1604 is directly contrary to this policy because it allows Nationwide to "have its cake and eat it too" by being able to ignore an arbitrator's entire award whenever that award exceeds the statutory minimum coverage limits.

For the additional reasons stated above, I concur with the majority.

C. BROWN and J. P. CELEBREZZE, JJ., concur in the foregoing opinion.

HOLMES, J., dissenting. I dissent due to the majority's failure to recognize the conclusiveness of the insurance binder in question.

A binder of insurance is deemed to consist of the standard policy and any additional coverage requested by the insured. A binder has generally been defined as an instrument which is used when a policy cannot immediately be issued, to evidence that coverage attaches at a specific time and continues until the policy is issued. 43 American Jurisprudence 2d (1982) 304, Insurance, Section 219. It is well-settled that when the issuance of a binder is followed by the delivery of a written policy, the terms of the binder are to be found in the insurance policy. 2 Couch on Insurance 2d (1984) 71, Section 14:37. In addition, the binder incorporates the very terms of the policy ordinarily issued by the insurer to insure like risks. *Id.* at 68, Section 14:35.

The standard policy issued by appellant Nationwide Mutual, which provides the increased uninsured motorists coverage as requested by Stornse, always includes Endorsement 1604. In fact, Nationwide Mutual does not offer such a policy without the endorsement. Based on the above-mentioned authority, it does not matter if Stornse received the endorsement because the binder necessarily includes the endorsement as it is stan-

dard within the insurance policy. Therefore, the court of appeals committed error in finding a genuine issue of material fact in whether Stornse actually received the endorsement.

This state and other jurisdictions have consistently recognized that, as a matter of law, an insurance binder incorporates all of the terms and provisions of the policy for which application was made.[4] In these cases it is conclusively presumed, in the absence of evidence to the contrary, that the parties contemplated the standard policy containing the usual conditions and limitations.

There is a total lack of evidence in the record that the parties intended anything but the standard automobile insurance policy issued by Nationwide Mutual which included the requested increase in uninsured motorists coverage. This standard policy is exactly what Stornse wanted and agreed upon. Thus, appellees are bound by the terms of the policy which includes Endorsement 1604.

Therefore, I would reverse the judgment of the court of appeals as the trial court properly granted partial summary judgment in favor of appellants.

---

[4] See *Ins. Co. of Valley of Va.* v. *Mordecai* (1859), 63 U.S. 111; *Great American Ins. Co.* v. *Maxey* (C.A. 5, 1951), 193 F. 2d 151; *Republic Ins. Co.* v. *French* (C.A. 10, 1950), 180 F. 2d 796; *Livingston* v. *American Title & Ins. Co.* (Fla. App. 1961), 133 So. 2d 483; *Queen Ins. Co.* v. *Hartwell Ice & Laundry Co.* (1910), 7 Ga. App. 787, 68 S.E. 310; *Altrocchi* v. *Hammond* (1958), 17 Ill. App. 2d 192, 149 N.E. 2d 646; *Jennings* v. *Illinois Auto. Club* (1943), 319 Ill. App. 587, 49 N.E. 2d 847; *Reynolds* v. *Northwestern Mut. Life Ins. Co.* (1920), 189 Iowa 76, 176 N.W. 207; *DeCesare* v. *Metropolitan Life Ins. Co.* (1932), 278 Mass. 401, 180 N.E. 154; *Mutual Fire Ins. Co.* v. *Goldstein* (1912), 119 Md. 83, 86 A. 35; *Robinson* v. *State Farm Mut. Auto. Ins. Co.* (1972), 188 Neb. 470, 197 N.W. 2d 396; *Allen* v. *Metropolitan Life Ins. Co.* (1965), 44 N.J. 294, 208 A. 2d 638; *Seiderman* v. *Herman Perla, Inc.* (1935), 268 N.Y. 188, 197 N.E. 190; *Cees Restaurant, Inc.* v. *Lobdell* (1965), 15 N.Y. 2d 275, 206 N.E. 2d 180; *Reishus* v. *Implement Dealers Mut. Ins. Co.* (N.D. 1962), 118 N.W. 2d 673; *Schaible* v. *Louisville Title Ins. Co.* (1963), 118 Ohio App. 328 [25 O.O.2d 190]; *Eureka Ins. Co.* v. *Robinson, Rea & Co.* (1867), 56 Pa. 256, 94 Am. Dec. 65; *Hyder* v. *Metropolitan Life Ins. Co.* (1937), 183 S.C. 98, 190 S.E. 239; *Epstein* v. *Great American Ins. Co.* (1965), 54 Tenn. App. 447, 392 S.W. 2d 331; Annotation (1967), 12 A.L.R. 3d 1304.