LUIS MENDES *v.* AUTOMOBILE INSURANCE COMPANY
OF HARTFORD
(13636)
AUTOMOBILE INSURANCE COMPANY OF HARTFORD *v.*
LUIS MENDES
(13637)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued June 14—decision released August 22, 1989

*Philip F. von Kuhn,* with whom, on the brief, was *Arnold J. Bai,* for the appellant in both cases (Automobile Insurance Company of Hartford).

*Robert R. Sheldon,* for the appellee in both cases (Luis Mendes).

HULL, J. The primary issue on these appeals is whether an automobile insurance policy provision that

permits either party to the contract to demand a trial de novo when an uninsured or underinsured motorist arbitration award exceeds $20,000 is void as against public policy. We agree with the trial court's ruling that such a provision contravenes the public policy of this state and is therefore unenforceable. Accordingly, we find no error.

The procedural and factual history of these appeals is not in dispute. On July 24, 1986, the defendant, Automobile Insurance Company of Hartford,[1] issued to Manuel Mendes an automobile insurance policy covering two vehicles owned by him. The plaintiff, Luis Mendes, was an insured under this policy. The policy provides that uninsured and underinsured motorist claims shall be resolved by arbitration. Specifically, where the amount in demand is $40,000 or less, the arbitration proceeding is to be conducted by a single arbitrator agreed upon by the insured and the defendant. Where the amount in demand is more than $40,000, the insured and the defendant are each to select an arbitrator, who are then to agree upon a third arbitrator. The policy then provides: "The decision made by the arbitrator(s) will be binding. However, either party may make a written demand for a trial if the amount of damages awarded is greater than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If this demand is not made within 60 days of the decision of the arbitrator(s), the amount of damages awarded by the arbitrator(s) will be binding." The minimum coverage limit for bodily injury liability in Connecticut is $20,000. See General Statutes §§ 38-175c, 14-112. Thus, the quoted

[1] We recognize that Automobile Insurance Company of Hartford is the plaintiff on one appeal and the defendant on the other. For purposes of convenience, Automobile Insurance Company of Hartford will be referred to throughout the opinion as the defendant.

policy provision (escape clause) purports to grant either party the right to demand a trial de novo where an uninsured or underinsured arbitration award exceeds $20,000.

On or about November 17, 1986, the plaintiff sustained personal injuries when, as a pedestrian, he was struck by an automobile driven by Margaret Monterosso. At the time of this accident there was $20,000 in bodily injury liability coverage on the Monterosso vehicle, which was collected from Monterosso's insurance carrier. Thereafter, pursuant to the arbitration provision contained in the defendant's insurance policy, the plaintiff submitted a demand for arbitration to the defendant seeking recovery of underinsured motorist benefits for injuries received in the accident.[2] Subsequently, the plaintiff's claim was arbitrated before a three person arbitration panel. On September 21, 1988, the arbitration panel unanimously awarded the plaintiff $50,000 in underinsured motorist benefits. Relying upon the escape clause, the defendant notified the plaintiff by letter dated October 19, 1988, that it had "chosen not to be bound" by the arbitrators' decision and that it was demanding a trial de novo.

On October 21, 1988, the defendant filed in the Superior Court an application to vacate the arbitration award pursuant to General Statutes § 52-418 (a) (4).[3] The defendant argued that because the arbitration award exceeded $20,000, it was entitled to a trial de

---

[2] The defendant's insurance policy provided underinsured motorist coverage in the amount of $100,000.

[3] "[General Statutes] Sec. 52-418. VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

novo under the express language of the escape clause. Pursuant to General Statutes § 52-417,[4] the plaintiff on October 26, 1988, filed with the Superior Court an application seeking to confirm the arbitration award and requesting that an order be issued directing the defendant to pay the full amount of the award, plus interest from the date of the award. By way of a single memorandum of decision dated December 23, 1988, the trial court ruled upon both applications. Relying upon cases in other jurisdictions that have addressed the validity of similar escape clauses, the trial court concluded that the provision at issue unfairly favored the defendant insurer and therefore was unenforceable as against public policy. Accordingly, the trial court granted the plaintiff's application to confirm the arbitration award and denied the defendant's application to vacate the arbitration award. From these judgments the defendant appeals.

In reaching its conclusion that the escape clause at issue is unenforceable, the trial court relied heavily on General Statutes § 38-175c, which requires every uninsured motorist insurance policy that contains a provision for binding arbitration to include "a provision for final determination of insurance coverage in such arbitration proceeding." The insurance policy in this case provides that the decision of the arbitrator or arbitrators "will be binding." The statute is nonetheless not precisely on point, because it applies only to determi-

---

[4] "[General Statutes] Sec. 52-417. APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

nations of "insurance coverage," while the underlying issue in these appeals apparently concerns the amount of damages. Undeniably, however, § 38-175c manifests a strong public policy in favor of final arbitral resolution of disputes concerning uninsured motorist insurance policies. That policy is undermined by an escape clause allowing the defendant at will to set aside arbitral awards in excess of $20,000.

The trial court found further support for its conclusion in three out-of-state cases that have held similar escape clauses invalid. See *Schmidt* v. *Midwest Family Mutual Ins. Co.*, 413 N.W.2d 178 (Minn. App. 1987), aff'd en banc, 426 N.W.2d 870 (Minn. 1988); *Nationwide Mutual Ins. Co.* v. *Marsh*, 15 Ohio St. 3d 107, 472 N.E.2d 1061 (1984); *Pepin* v. *American Universal Ins. Co.*, 540 A.2d 21 (R.I. 1988). There appears to be little difference between the escape clauses held invalid in these cases and the escape clause at issue on this appeal. All of them purport to grant a trial de novo by request of either the insured or insurer if an uninsured or underinsured motorist arbitration award exceeds the state statutory minimum bodily injury insurance requirement, but make binding any award less than that amount.

The court in *Schmidt* v. *Midwest Family Mutual Ins. Co.*, supra, 180, held such a provision invalid for the following reasons: "[The] provision . . . skews the trial de novo remedy in favor of the insurer, which is more likely to be dissatisfied with an award above $25,000 [the statutory minimum bodily injury requirement]. Conversely, the insured is more likely to be dissatisfied with an award below $25,000, which could not be tried de novo." The *Schmidt* court went on to state that "[t]he trial de novo provision not only favors the insurer, in a contractual relationship which in most situations is one of unequal bargaining power and little

opportunity for negotiation, but also contravenes public policies favoring arbitration and judicial economy." Id., 181.

In *Nationwide Mutual Ins. Co.* v. *Marsh,* supra, 110, Justice Sweeney, in a concurring opinion, had the following to say with regard to the validity of a similar escape clause: "The effect of Endorsement 1604 is to create binding arbitration for awards below the $12,500/$25,000 statutory coverage minimums and to create non-binding arbitration for awards in excess of those minimums. Nationwide asserts that the foregoing arbitration agreement is entirely fair because *both* the insured and Nationwide have the right to avoid an arbitration award in excess of $12,500/$25,000. This 'facial equality' is not a true equality, however, because both parties are bound only by low awards, which are likely to be in Nationwide's favor. High awards can be avoided by either the insured or Nationwide, but it is unlikely that an insured would ever seek to avoid a high award, even if he was unsatisfied with it, because by avoiding the award and seeking a trial the insured would incur additional legal expense while also placing at risk the entire award that he already has received. Thus, the real impact and effect of Endorsement 1604 is to give Nationwide the power to avoid high arbitration awards, regardless of whether those awards are fair and just." Id., 111. In addition to the provision's inherent unfairness, Justice Sweeney noted that the escape clause contravened Ohio's strong public policy in favor of final and binding arbitration. Id. In striking down a similar escape clause as against public policy, the court in *Pepin* v. *American Universal Ins. Co.,* supra, 22, stressed that such a provision circumvented "[t]he whole purpose of arbitration, namely, providing an expedient and inexpensive mechanism for finally resolving disputes . . . ."

We find the reasoning of these out-of-state cases highly persuasive. Certainly, these authorities would appear to render untenable the defendant's position that the escape clause contained in its policy is valid and enforceable. The defendant strongly asserts, however, that the above-noted cases are not germane because the escape clauses in those cases were examined in the context of arbitration schemes fundamentally different from the one found in the defendant's policy. Specifically, the defendant points out that the arbitration schemes discussed in those other jurisdictions provide that *either party* has the right to submit the dispute to arbitration. Consequently, the insurance carrier could compel any and all claimants to submit to arbitration and subject them to an escape clause that clearly favored the carrier. In contrast, the defendant notes that under the arbitration provisions contained in its policy it cannot compel a claimant, such as the plaintiff, to submit to arbitration; rather, *only the claimant* has the right to submit the dispute to arbitration. If a claimant chooses not to have his claim arbitrated, he may seek relief directly in the courts. This distinction is of critical importance, the defendant argues, because "although it may be unfair to allow an insurer to force an insured to go through the time and expense of arbitration while retaining the right to render the results a nullity [pursuant to an escape clause], the same rationale does not apply when the option of going to arbitration rests entirely with the insured." We are not persuaded.

We agree with the defendant that its inability to compel the plaintiff to submit to arbitration is a factor that was not present in the arbitration schemes discussed in the cases cited above. We disagree, however, that this distinguishing feature ameliorates the unfairness of the escape clause to such a degree that it may be

permitted to stand. We acknowledge that many claimants may take advantage of the right provided them in the defendant's policy to avoid arbitration altogether. Our concern, however, is focused not on those claimants sagacious enough to exercise that right, but on the individuals who unwittingly submit to arbitration under the good faith belief that any award will be final and binding. We make this statement fully aware of the fact that most claimants choosing arbitration are doing so on the advice of counsel who are presumed to know the risks involved in an arbitration proceeding featuring an escape clause like the one at issue. Nevertheless, we are mindful of the fact that arbitration is a process open to laymen not represented by counsel, and it is from the vantage point of such laymen that we must judge the fairness of the defendant's arbitration scheme in general and the escape clause in particular.

The arbitration section of the defendant's policy states that "the covered person may make a written demand for arbitration within 2 years of the date of accident." Thereafter, the pertinent language of the escape clause provides that "[t]he decision made by the arbitrator(s) will be binding." In typical boilerplate fashion characteristic of insurance policies, the escape clause then states that either party may demand a trial "if the amount of the damages awarded is greater than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged." In our view it is wishful thinking on the part of the defendant to believe that a layman of average intelligence is adequately put on notice by such language that arbitration awards in excess of $20,000 are nonbinding. The net effect of this lack of notice is that the unwary claimant is lured into an arbitration process favored by our

legislature as a swift, fair and inexpensive means for final settlement of his claim, only to find out after the fact that, pursuant to an escape clause, his award in excess of $20,000 is nonbinding and that the defendant may demand a trial de novo.

We see little difference between the scenario just described and the cases discussed above in which the insurance carrier compels a claimant to submit to arbitration. In each case, the claimant is subjected unfairly to an arbitration process rendered inequitable by the presence of an escape clause. In sum, we find without merit the defendant's contention that any unfairness created by the presence of an escape clause in its arbitration scheme is remedied by the right provided a claimant under its policy to avoid arbitration altogether. Because the language of the defendant's policy does not adequately apprise all potential claimants of the true nature of the escape clause and its effect on arbitration awards in excess of $20,000, the protection offered a claimant by the right to avoid arbitration is largely illusory.

We also note that in addition to the creation of the manifest inequities described previously, an escape clause like the one at issue may be used as leverage by an insurance carrier to coerce a claimant who has received an arbitration award in excess of $20,000 to accept a settlement or compromise less than the amount awarded upon the threat of a demand for a trial de novo. This state has evinced a strong public policy against such unfair claim settlement practices with the enactment of General Statutes § 38-61 (6) (k).[5]

---

[5] General Statutes § 38-61 (6) (k) provides: "Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following . . . (k) making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration."

For the foregoing reasons, we conclude that the escape clause contained in the defendant's insurance policy is unenforceable as against public policy. Accordingly, the trial court acted correctly in granting the plaintiff's application to confirm the arbitration award and in denying the defendant's application to vacate the arbitration award.[6]

There is no error.

In this opinion the other justices concurred.

---

[6] On appeal, the defendant for the first time argues that if this court should conclude that the escape clause contained in its policy is unenforceable as against public policy, the *entire* arbitration section should be stricken, thus rendering the plaintiff's arbitration award a nullity. Since the claim that the escape clause is not severable from the balance of the arbitration section was not raised by the defendant below, we decline to address it. See Practice Book § 4185.