**Michael O'NEILL and Linda O'Neill**

v.

**BERKSHIRE MUTUAL INSURANCE COMPANY.**

Civ. A. No. 91–18.

United States District Court,
D. Vermont.

March 26, 1992.

Robert J. O'Rourke, Ryan, Smith and Carbine, Ltd., Rutland, Vt., for plaintiffs.

John J. Boylan, III, Kiel and Boylan, Springfield, Vt., for defendant.

## OPINION AND ORDER

BILLINGS, District Judge.

Plaintiffs Michael and Linda O'Neill moved this court on March 9, 1992, to confirm an arbitration award in the amount of $450,806.26 and to order judgment on that award. Defendant Berkshire Mutual Insurance Company ("Berkshire Mutual"), pursuant to the arbitration clause contained in the policy issued to plaintiff, requested a *de novo* trial following the arbitrators' decision. For the reasons stated hereinbelow, plaintiffs' motion is granted.

### Background

On March 15, 1988, plaintiff Michael O'Neill was struck from behind while riding his bicycle by an automobile owned and operated by Robert Bolton. Plaintiffs, Vermont residents, were insured at that time by defendant Berkshire Mutual, a Massachusetts corporation. Their policy included uninsured motorist coverage in the amount of $500,000. Mr. Bolton was insured under an automobile liability policy with limits of $50,000.

Mr. O'Neill suffered grave injuries as a result of the accident and incurred medical expenses in excess of $138,000.00. He also suffered severe and permanent physical, mental and emotional impairment; lost wages; loss of earning capacity; and, loss of enjoyment of life. Mrs. O'Neill suffered loss of consortium as a result of her husband's injuries.

Plaintiffs filed suit in federal court against Robert Bolton and his employer, Awana Clubs International, alleging that Mr. Bolton negligently operated his vehicle while acting within the scope of his employment. Plaintiffs settled their suit against Mr. Bolton with the consent of defendant on November 6, 1990, for the limits of his policy, $50,000. However, plaintiffs dis-

missed the claim against Awana without prejudice because Berkshire Mutual refused to consent to a settlement, insisting that plaintiffs preserve any rights of subrogation defendant may have against Awana Clubs International.

Because Mr. O'Neill's medical bills far exceeded the limits of Mr. Bolton's policy, plaintiffs made a demand for payment under the uninsured motorist provision of their policy[1]. Berkshire Mutual refused this demand and disputed both liability and damages as alleged by plaintiffs.

Plaintiffs' policy provides that if there is a dispute concerning coverage or the amount of damages, either the insurance company or the insured can make a written demand for arbitration. The policy provides further that the arbitrators' decision will be binding as to whether the insured is legally entitled to recover damages and the amount of damages. However, the policy specifically states that the amount of damages awarded will be binding only if it does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of Vermont[2]. If the amount exceeds the limit, then, according to the policy, either party may demand a trial within sixty days of the arbitrators' decision.

On three occasions between November 1990 and January 1991, plaintiffs made a written demand for arbitration. Then, on March 14, 1991, this court required Berkshire Mutual to submit to arbitration. The parties presented their case to an arbitration panel on August 14 and 15, 1991, and September 19, 1991. On November 16, 1991, the panel issued an award for plaintiffs in the amount of $1,350,000.00.

Plaintiffs filed the award with this court on November 19, 1991, and requested that the court order defendant to pay the amount of the award to the limits of the underinsured policy. On January 10, 1992, Berkshire Mutual filed a request for a trial.

Plaintiffs now seek an order confirming the award and judgment on that award.

### Discussion

The essential issue before this court is the validity of the arbitration clause contained in plaintiffs' policy. We must decide whether that language of the clause which allows both the insurer and the insured to avoid an arbitrators' award of damages exceeding the statutory limits is valid or, alternatively, whether it is void as against public policy. We believe the latter to be true.

The Vermont Supreme Court has yet to decide the validity of the so-called "escape hatch" language of the arbitration clause in issue. Such language is commonplace in insurance policies. *See WorldWide Ins. Co. v. Klopp*, 603 A.2d 788 (Del.Supr.1992); *Mendes v. Automobile Ins. Co. of Hartford*, 212 Conn. 652, 563 A.2d 695 (1989); *Pepin v. American Universal Ins. Co.*, 540 A.2d 21 (R.I.1988); *Schmidt v. Midwest Family Mut. Ins. Co.*, 426 N.W.2d 870 (Minn.1988); *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061 (1984).

Several courts have addressed the validity of this type of arbitration clause language, however, and a majority have held that the clause itself is void as against public policy. *Id.* In Delaware, Connecticut, Rhode Island, Minnesota, and Ohio, the courts have ruled against the enforceability of arbitration clauses identical to that contained in the instant plaintiffs' policy.

On the one hand, the courts have held that albeit ostensibly neutral, the escape hatch language of the clause as applied unfairly and unequivocally favors the insurer vis-a-vis the insured. Because the clause allows an arbitration award over the statutory minimum to be appealed while precluding the same for a low award, the courts have reasoned that this enables the

---

**1.** Uninsured motorist coverage includes coverage of underinsured motorists. *See* Vt.Stat.Ann. tit. 23, § 941(f) (1987).

**2.** Vermont's financial responsibility statute, Vt. Stat.Ann. tit. 23, § 801 (1987), establishes the minimum financial limits for liability for persons injured in a motor vehicle accident: $20,000 for one person and $40,000 for two or more persons.

insurer to avoid a high award while binding the insured to a low award.

The Delaware court in *Klopp* explicated these problematic, unseemly consequences:

> Under the present policy language, both parties are bound by a low award which the insurance company is unlikely to appeal. While high awards may be appealed by either party, common experience suggests that it is unlikely that an insured would appeal such an award. It is the insurer, who, generally, would be dissatisfied with a high award. The policy provision thus provides an "escape hatch" to the insurer for avoidance of high arbitration awards, whether or not the award was fair and reasonable. However, the insured, who would tend to be dissatisfied with a low award, is barred from appealing such an award, i.e., an award under financial responsibility limits.

*Id. See also Marsh*, 15 Ohio St.3d at 111–12, 472 N.E.2d at 1064 (Sweeney, J., concurring).

On the other hand, the courts have concluded that the clause ineluctably negates the salutary purposes of arbitration—the efficient, cost-effective resolution of disputes. In *Schmidt,* the Minnesota court examined a clause identical to the instant one. The court determined that

> [t]he policy's arbitration provision, instead of providing a speedy, informal and relatively inexpensive procedure for resolving controversies between parties—the raison d'etre of arbitration—instead substantially thwarts these policy goals. By permitting resort to the court systems for a trial *de novo* notwithstanding the absence of any claimed impropriety in the arbitration process itself, by fostering multiple hearings in multiple forums, by increasing the costs to the contracting parties, and, by unnecessarily, and without real cause, extending the time consumed in resolving the controversy it likewise operates to defeat goals designed to promote judicial economy and respect for the judicial system.

426 N.W.2d at 874. *See also Pepin,* 540 A.2d at 22–23; *Mendes,* 212 Conn. at 658–60, 563 A.2d at 698.

The Connecticut court determined that by allowing and then capriciously disavowing arbitration, the Automobile Insurance Company of Hartford essentially contravened Connecticut's unfair insurance practices law. That law proscribes the use of the right to appeal an arbitration award as a bargaining chip to encourage the insured to settle for less than the amount of the award. *Mendes,* 212 Conn. at 658–60, 563 A.2d at 698.

Only in New Jersey and Florida, where the respective legislatures have specifically adopted statutes providing for the restricted appeal of arbitration awards in underinsured motorist cases, have arbitration clauses with escape hatch provisions been upheld. *See Cohen v. Allstate Ins. Co.,* 231 N.J.Super. 97, 555 A.2d 21 (1989), *cert. denied,* 117 N.J. 87, 563 A.2d 846 (1989); *Roe v. Amica Mut. Ins. Co.,* 533 So.2d 279 (Fla.1988). Vermont has not adopted such a law.

Vermont has, however, adopted a statute similar to the statute in issue in *Mendes* proscribing unfair insurance practices. *See* Vt.Stat.Ann. tit. 8, § 4724(9)(J) (1975). Further, arbitration is encouraged in Vermont as evidenced by its adoption of the Uniform Arbitration Act in 1985. Vt.Stat. Ann. tit. 12, §§ 5651 *et seq.* (1973). That act specifically provides for the enforcement of arbitration clauses and awards issued pursuant to arbitration. *Id.* at §§ 5652(a), 5653. As well, the Vermont Supreme Court has sanctioned the use of arbitration procedures to resolve disputes in automobile insurance cases. *See Preziose v. Lumbermens Mut. Cas. Co.,* 152 Vt. 604, 568 A.2d 397 (1989).

This court has previously examined the validity of standard insurance policy clauses in the light of public policy. In *Goodrich v. Lumbermens Mut. Cas. Co.,* 423 F.Supp. 838, 842 (D.Vt.1976), we held that enforcement of an insurance policy's "excess-escape" and "pro-rata" clauses—provisions which would have permitted the insurer to avoid Vermont's minimum liability

coverage statute, Vt.Stat.Ann. tit. 23, § 941 (1987)[3]—would contravene public policy by allowing insurers to deny recovery for the actual losses of the insured. This holding comported with the majority rule at the time. The Vermont Supreme Court having not addressed the issue, the court went on to state that the Vermont Supreme Court would likely apply the majority rule. *Id.*

In *Brunet v. American Ins. Co.*, 660 F.Supp. 843, 847–48 (D.Vt.1987), we further held that the "anti-stacking" and "excess-escape" clauses of an insurance policy were void as against public policy. As in *Goodrich,* we found that the clauses in issue undermined the policy embodied in the minimum liability coverage statute by permitting insurers to compare coverages or, alternatively, to deem coverage "excess" rather than "primary," thereby reducing coverage. *Id.*

Clearly, a majority of jurisdictions and this court have demonstrated a potent aversion to insurance policy provisions which, legerdemain notwithstanding, discriminate against the insured and subvert public policy. In the light of patent discrimination, Vermont's favorable disposition toward arbitration (evinced in its statutes and the case law), and the state's compelling interest in promoting efficient and cost-effective dispute resolution, we hereby adopt the rule of those several states invalidating the escape clauses contained in arbitration provisions of insurance policies. We consider such clauses to be void as against public policy.

Therefore, since the policy in issue contains an escape clause, we hereby render that clause void as against public policy. We trust the Vermont Supreme Court would similarly hold.

### *Conclusion*

For the reasons stated hereinabove, plaintiffs' motion to confirm the arbitration award and order judgment is hereby GRANTED. The arbitration award dated November 16, 1991, is hereby CONFIRMED and, accordingly, JUDGMENT on the award in the principal amount of $450,-806.26 is ORDERED. We leave open the issue of prejudgment interest for a later date.

SO ORDERED.

---

**3.** Essentially, the minimum liability statute requires every policy to have minimum uninsured motorist coverage, rather than requiring every injury to be covered to a minimum level. *Id.* at 847.