963 P.2d 295

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts corporation, Plaintiff–Appellee, Cross Appellant,**

v.

**Anthony Joseph MANDILE and Martha Jane Mandile, husband and wife, individually and as the natural parents and guardians of Joshua Randall Mandile, Joshua Randall Mandile, a minor by and through his natural parents and guardians, Anthony Joseph Mandile and Martha Jane Mandile, Defendants–Appellants, Cross Appellees.**

No. 1 CA–CV 96–0612.

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 30, 1997.

Review Denied Sept. 24, 1998.*

---

* Justice McGregor did not participate. Chief Justice Zlaket and Justice Feldman voted to grant the petition for review only.

Cronin & Stanewich by Robert B. Stanewich, Phoenix, for Plaintiff–Appellee, Cross Appellant.

Leonard and Clancy, P.C. by James J. Leonard, Jr., Kenneth P. Clancy, Phoenix, for Defendants–Appellants, Cross Appellees.

## OPINION

GRANT, Judge.

This appeal concerns the validity of a provision in an underinsured motorist ("UIM") policy that permits either the insurer or the insured to appeal an arbitration award if the arbitrators set damages at, or in excess of, Arizona's statutory minimum financial responsibility requirement of $15,000. *See* Arizona Revised Statutes Annotated ("A.R.S.") § 28–1102(6) (1989). We hold such a provision is not violative of public policy. We therefore affirm the trial court's denial of the insureds' Motion for Summary Judgment concerning the arbitration appeal provision. We affirm the trial court's grant of summary judgment to the insureds with regard to the notice provision in the policy. We remand the case to the trial court in accordance with Liberty Mutual's appeal for trial *de novo*.

## FACTS AND PROCEDURAL HISTORY

On January 7, 1986, the insureds' five-year-old son, Joshua, was struck by a pick-up truck while he was riding his bicycle. The driver of the truck had an automobile insurance policy providing $100,000 in liability insurance. On the date of the accident, the insureds had an automobile policy through Liberty Mutual which provided $300,000 of UIM coverage.

The insureds filed a complaint against the driver within six months of the accident. The insureds were represented by counsel in that litigation. The complaint was ultimately dismissed without prejudice for failure to prosecute. However, in October 1991, the insureds settled with the driver's insurance company for the $100,000 policy limit.

### A. The First Declaratory Judgment Action and the Arbitration

On November 5, 1991, one month after settling with the driver, and more than five-and-one-half years after the accident, the insureds submitted their UIM claim to Liberty Mutual. In December 1991, one month after the insureds submitted their UIM claim, Liberty Mutual filed a declaratory judgment action pursuant to A.R.S. section 12–1831 (1994), asking for a judgment declaring that the insureds failed to comply with the prompt notification requirement of their policy. On February 28, 1995, the trial court rejected a stipulation between the parties to continue the action on the inactive calendar through May 1995, pending resolution of the arbitration, because the matter had been on the court's calendar for more than two years. The trial court dismissed the declaratory judgment action for lack of prosecution pursuant to Rule 41(b) of the Arizona Rules of Civil Procedure.

The underlying liability claim proceeded to arbitration. The late notice issue was not litigated in the arbitration proceedings. The driver's liability was not contested at the arbitration because the driver admitted: (1) he was speeding when the accident occurred; (2) he was familiar with the street where the accident occurred; and (3) he was aware that children were often in the street. The only

issue at arbitration was causation. Joshua had manifested some speech impairment prior to the accident, and Liberty Mutual maintained that some or all of his problems constituted pre-existing conditions.

On May 12, 1995, a three-member arbitration panel awarded the insureds the policy limit of $300,000. Liberty Mutual appealed the arbitration award to superior court and sought a new trial, contending it was not bound by the award under the terms of the policy.[1]

### B. The Appeal

This appeal arises from a second declaratory judgment action filed by Liberty Mutual in April 1995. Liberty Mutual sought a ruling that it had no duty to pay UIM benefits under the policy because the insureds did not give it timely notice of the claim. The insureds counterclaimed, arguing the arbitration appeal provision of the policy was unenforceable as adhesive, unconscionable and violative of Arizona's strong public policy favoring arbitration.

On May 23, 1996, the trial court granted summary judgment to the insureds regarding the timeliness of notice of its claim against Liberty Mutual, finding that under the circumstances of this case, the insureds were not dilatory and that Liberty Mutual had not established prejudice from the delayed notice. The court also granted Liberty Mutual's Motion for Summary Judgment concerning the arbitration appeal provision, finding such provisions enforceable and not violative of public policy.

After subsequent pleadings, and pursuant to A.R.S. section 12–341.01 (1992), the insureds were awarded costs and attorneys' fees incurred both in the underlying action and in the virtually identical declaratory judgment action. Both parties timely cross-appealed, and both seek attorneys' fees and costs on appeal. The insureds appeal the denial of summary judgment on their counterclaim involving the arbitration appeal provision. Liberty Mutual cross-appeals the

grant of summary judgment to the insureds on the notice issue, as well as the trial court's award of costs and attorneys' fees to the insureds.

We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994). For the reasons that follow, we affirm. We also affirm the trial court's award of attorneys' fees and costs to the insureds.

### ISSUES

The following issue is presented on appeal:

I. Did the trial court improperly grant summary judgment in Liberty Mutual's favor on the insureds' counterclaim by finding Liberty Mutual's arbitration appeal provision enforceable in Arizona?

The issues presented in the cross-appeal are:

II. Did the trial court improperly grant summary judgment to the insureds by holding that the insureds' notice was timely and by not absolving the insurer from its responsibilities under the UIM policy?

III. Did the trial court abuse its discretion in awarding attorneys' fees and costs to the insureds?

### DISCUSSION

### THE APPEAL

### I. The Arbitration Appeal Provision

■ The arbitration appeal provision in the Liberty Mutual policy provides:

If we and a covered person do not agree:
1. Whether that person is legally entitled to recover damages under this endorsement or
2. As to the amount of damages; either party may make a written demand for arbitration.

. . .

Unless both parties agree otherwise, arbitration will take place.... Local rules of law as to procedure and evidence will ap-

---

1. The scope of a trial following an arbitration appeal was the subject of a special action, 1 CA–SA 97–0008, filed by Liberty Mutual with this court. On February 19, 1997, we denied the

insureds' Motion to Consolidate this appeal with that special action and also declined to accept jurisdiction over the special action.

ply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the covered person is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

According to the above provision, the arbitrators' decision is binding only if the award is less than the statutory financial responsibility requirement in Arizona ($15,000), regardless of the amount of UIM coverage purchased by the insured. Either party may appeal an award in excess of the amount required by statute. The validity of a *de novo* trial provision in an automobile policy presents a question of first impression in this state.

The trial court relied upon *Krizanich v. Liberty Mut. Fire Ins. Co.*, 181 Ariz. 108, 887 P.2d 989 (App.1994), in ruling that arbitration appeal provisions are enforceable. In *Krizanich*, the plaintiff was injured in a motor vehicle accident and received $40,000 from the insurer of the liable driver. The liable driver's policy limits were $50,000. Krizanich then sought his full UIM policy coverage of $100,000 from his own carrier, Liberty Mutual, arguing his injuries exceeded the liable driver's policy limit. Liberty Mutual disagreed and submitted the matter to arbitration. In *Krizanich*, however, the trial court merely addressed the *de novo* provision in Liberty Mutual's policy. Because neither party challenged the enforceability of the appeal provision itself, the court limited its analysis solely to interpretation of "the amount of damages" phrase in the appeal provision.

The arbitration provision in this case is identical to the one in *Krizanich*. The sole issue submitted to arbitration in *Krizanich* was whether, and to what extent, Krizanich's damages exceeded the $50,000 policy limits of the liable driver. The arbitrators found Krizanich's settlement with the liable driver had fully compensated him for his injuries, and they denied him any award. Krizanich then reasserted his claim against Liberty Mutual in superior court. Liberty Mutual moved for confirmation of the arbitration award and dismissal of the plaintiff's complaint. Liberty Mutual argued the arbitration was binding and the legal validity of the award was not subject to attack.

Neither party in *Krizanich* challenged the enforceability of the arbitration appeal provision. Instead, the parties sought an interpretation of the "amount of damages" phrase. Krizanich argued the phrase referred to the total amount of damages suffered by the insured. He further argued his damages were determined by his $40,000 settlement, which exceeded Arizona's Financial Responsibility statutory minimum of $15,000; thus, he was entitled to reject the arbitration award and demand a new trial under the arbitration provision of the policy. In contrast, Liberty Mutual interpreted the provision to refer only to that amount of the insured's damages uncompensated by the liable driver's insurance and awarded by the arbitrators against the UIM carrier. Both the trial court and appellate court agreed with Liberty Mutual, ruling that, because the arbitrators had entered an award of less than $15,000 against Liberty Mutual, the arbitration bound the parties. The appellate court held that "amount of damages" referred not to the claimant's damages as a whole, but only to "the claimant's arbitrable damages—the only damages the arbitrators must resolve—the damages, if any, recoverable against Liberty Mutual under its underinsured endorsement." *Id.*

The trial court ruled *Krizanich* controlled the enforceability of the arbitration appeal provision. However, the trial court construed *Krizanich* too broadly. Although *Krizanich* states that arbitration binds the parties, as we have indicated, the *Krizanich* court did not address or decide the question

whether an arbitration appeal provision would be consistent with public policy.

The enforceability of the arbitration appeal provision is strictly a legal issue; interpretation of an insurance contract is a question of law we review *de novo. University Mechanical Contractors of Ariz., Inc. v. Puritan Ins. Co.,* 150 Ariz. 299, 301, 723 P.2d 648, 650 (1986). Arizona has enacted the Uniform Arbitration Act, A.R.S. sections 12–1501 to – 1518 (1994). Our public policy strongly favors arbitration as an expeditious and relatively inexpensive method of resolving disputes. *Meineke v. Twin City Fire Ins. Co.,* 181 Ariz. 576, 581, 892 P.2d 1365, 1370 (App. 1994).

Most jurisdictions addressing the question have ruled that insurance contracts providing for *de novo* trials are void as contrary to the strong public policy favoring arbitration. *O'Neill v. Berkshire Mut. Ins. Co.,* 786 F.Supp. 397 (D.Vt.1992); *Field v. Liberty Mut. Ins. Co.,* 769 F.Supp. 1135 (D.Haw. 1991); *Mendes v. Automobile Ins. Co.,* 212 Conn. 652, 563 A.2d 695 (1989); *Schmidt v. Midwest Family Mut. Ins. Co.,* 426 N.W.2d 870 (Minn.1988); *Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992); *Pepin v. American Universal Ins. Co.,* 540 A.2d 21 (R.I.1988).

In *Schmidt v. Midwest Family,* the Minnesota Supreme Court, interpreting an arbitration appeal provision essentially identical to the one at issue, stated its rationale for finding the provision contrary to public policy:

> The policy's arbitration provision, instead of providing a speedy, informal, and relatively inexpensive procedure for resolving controversies between the parties—the *raison d'etre* of arbitration—instead substantially thwarts those policy goals. By permitting resort to the court system for a trial *de novo* notwithstanding the absence of any claimed impropriety in the arbitration process itself, by fostering multiple hearings in multiple forums, by increasing the costs to the contracting parties, and by unnecessarily, and without real cause, extending the time consumed in resolving the controversy it likewise operates to defeat goals designed to promote judicial economy and respect for the judicial system.

426 N.W.2d at 874. In *Schaefer v. Allstate,* 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992), an Ohio court characterized the arbitration appeal provision as an "escape hatch" which frustrates the purposes of arbitration and the public policy favoring arbitration. *Id.* Therefore, the court refused to enforce the provision.

By contrast, in *Worldwide Ins. Group v. Klopp,* 603 A.2d 788 (Del.1992), the court held that a *de novo* trial provision in an automobile policy permits either party to demand trial *de novo* only if the amount of the arbitrator's award exceeds the minimum amount required by that state's financial responsibility laws. The Delaware court denied review for smaller awards on the theory that such review is void as against public policy and unenforceable because it promotes litigation, circumvents arbitration, and provides an escape device that favors insurers. *Id.* at 791.

The insureds argue that, as applied, the "escape hatch" language in the provision, even if apparently neutral, unfairly and unequivocally favors the insurer. They base this argument on the fact that such a clause permits an appeal of high awards, while precluding appeals of low awards, thereby potentially enabling the insurer to avoid a high award while binding the insured to a low award. *O'Neill,* 786 F.Supp. at 398–99.

The requirement that parties arbitrate uninsured ("UM") and UIM claims is designed, in significant part, to limit the insurer's exposure by precluding the risks of a jury trial. *Huizar v. Allstate Ins. Co.,* 932 P.2d 839, 841 (Colo.App.1996). While the *de novo* trial provision permits either party to escape the arbitration award, most courts conclude that, as a practical matter, the insurer is much more likely to make such an election. *See, e.g., O'Neill,* 786 F.Supp. at 398.

A minority of jurisdictions has found no violation of public policy and enforces *de novo* trial provisions. *Mayflower Ins. Co. v. Mahan,* 180 Ill.App.3d 213, 129 Ill.Dec. 159, 535 N.E.2d 924 (1988); *Cohen v. Allstate Ins. Co.,* 231 N.J.Super. 97, 555 A.2d 21 (1989); *Bruch v. CNA Ins. Co.,* 117 N.M. 211, 870

P.2d 749 (1994); *Allstate Ins. Co. v. Jacobs,* 208 A.D.2d 578, 617 N.Y.S.2d 360 (N.Y.App. Div.1994); *Lind v. Allstate Ins. Co.,* 134 Or. App. 395, 895 P.2d 327, *modified,* 136 Or. App. 532, 902 P.2d 603 (1995); *Huizar.* Those cases have either centered on the fact that the parties contracted for the provision and therefore are entitled to the benefit of their bargain, or have upheld the provision for statutory reasons. For instance, in New Jersey and Florida, where the respective legislatures have adopted statutes specifically providing for the restricted appeal of UIM arbitration awards, arbitration clauses with "escape hatch" provisions have been upheld. *See Cohen,* 555 A.2d at 21; *Roe v. Amica Mut. Ins. Co.,* 533 So.2d 279 (Fla.1988).

Arbitration provisions in auto insurance policies ostensibly resolve disputes between the insurer and its insureds on UM and UIM claims in an expeditious manner at a minimum cost. However, we do not believe that appeals and *de novo* trial provisions subvert such benefits. Our legislature has provided for statewide compulsory arbitration of civil claims worth $50,000 or less. *See* A.R.S. § 12–133 and the Uniform Rules of Procedure for Arbitration. *De novo* appeals are an integral part of that arbitration system, and are expressly provided for in A.R.S. section 12–133(H) and in Arbitration Rule 7(c). Even though this case concerns contractual, not compulsory, arbitration, the public policy of this state clearly adopts appeal and trial *de novo* as part and parcel of the arbitration system. Arbitration resolves some cases relatively quickly and cheaply and induces settlements in others, but it also permits parties, who wish to do so, to proceed to a trial in the superior court. *See Huizar,* 932 P.2d at 839.

States that have struck down *de novo* trial provisions have concluded that the financial responsibility limit provision makes UM/UIM contractual arbitration too one-sided to be enforced. We believe those states are incorrect insofar as they have assumed that most cases will fall near the $15,000 value line, and that the battle is to get arbitrators above or below that line. This characterization describes only a small section of cases. When a plaintiff who thinks his case is worth $300,-000 gets only $50,000 from the arbitrators, that plaintiff will want the option of an appeal (and may use that option as a leverage point in settlement discussions). Conversely, an insurance company that thinks a case is defensible, and is ordered to pay $14,999, may wish it could appeal but will lack the right to do so. The *de novo* appeal right, overall, is probably as important to plaintiffs as to defendants.

Were we to hold the contract adhesive, our holding would be directly contrary to *Krizanich.* There, the court considered and rejected the argument that the *de novo* arbitration provisions were confusing or contrary to the reasonable expectations of an insured. The *Krizanich* court said instead that they were "neither remote nor submerged in boilerplate nor textually obscure," and were rather "textually prominent" and "reasonably clearly phrased." 181 Ariz. at 111, 887 P.2d at 992.

We next address the coverage issue. We must determine whether the trial court correctly granted summary judgment to the insureds or whether the UIM coverage should have been extinguished because of the insureds' allegedly untimely notice to Liberty Mutual of the claim.

### THE CROSS–APPEAL

## II. The Notice Provision Is Unenforceable in the Absence of a Showing of Actual Prejudice to the Insurer

Liberty Mutual appeals the trial court's grant of summary judgment in favor of the insureds on the issue of prompt notice. The policy provides, in pertinent part:

> Part E—Duties After an Accident or Loss:
> General Duties:
> We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witness.

To grant a motion for summary judgment, the trial court must find no genuine issue of material fact exists in the record and the moving party is entitled to judgment on the merits as a matter of law. *Orme Sch. v.*

*Reeves,* 166 Ariz. 301, 303, 802 P.2d 1000, 1002 (1990); Ariz. R. Civ. P. 56(c). In reviewing the trial court's ruling on a motion for summary judgment, this court must view the facts in the light most favorable to the party opposing the judgment. *Grain Dealers Mut. Ins. Co. v. James,* 118 Ariz. 116, 118, 575 P.2d 315, 317 (1978). This court determines *de novo* whether any genuine issues of material fact exist, and we reverse the summary judgment if our review reveals that reasonable inferences concerning material facts could be resolved in favor of the opposing party. *United Bank v. Allyn,* 167 Ariz. 191, 194, 805 P.2d 1012, 1015 (App. 1990).

■ Liberty Mutual maintains the insureds' allegedly untimely notice breached the insureds' duty to provide Liberty Mutual prompt notice of the accident and their UIM claim. Thus, Liberty Mutual claims it need not pay on the claim. The trial court held, as a matter of law, that the insureds' notice was timely under the circumstances of this case; therefore, the insureds were not in breach of the notice clause.

UIM coverage is similar to excess coverage in that both are triggered only upon the payment of another's coverage limits. In *Atlanta International Ins. Co. v. Checker Taxi Co.,* 214 Ill.App.3d 440, 158 Ill.Dec. 228, 574 N.E.2d 22 (1991), the court determined whether notice under an excess insurance policy was unreasonable as a matter of law. The appellate court held excess coverage is contingent upon the exhaustion of the underlying insurance policy and therefore, Checker's duty to give notice to its excess carrier did not ripen until Checker believed it reasonably likely that it would make a claim under its excess carrier policies. *Id.,* 158 Ill.Dec. at 232, 574 N.E.2d at 26.

■ We hold UIM coverage is similar to excess coverage because a UIM claim ripens only upon determination that the damages sustained exceed available liability policy limits. The driver's $100,000 policy limit was initially believed sufficient to compensate for Joshua's injuries. The full extent of Joshua's neurological injuries took years to manifest. Once the driver paid the policy limits and that amount was found inadequate for Joshua's extensive injuries, the insureds timely notified Liberty Mutual of the UIM claim.[2]

Additionally, the trial court found that Liberty Mutual failed to show it was prejudiced:

THE COURT FINDS the accident happened in 1986, notice was given in 1991, and the expert work was conducted in 1994. It is unknown whether information dissipated between 1986 and 1991 or 1991 and 1994. It is also unknown why the initial accident data could not be utilized.

Liberty Mutual has not demonstrated prejudice due to any delay in receiving notice of the insureds' UIM claim. It is undisputed that the insureds gave Liberty Mutual notice of the UIM claim five years, ten months after the accident and one month after the insureds settled with the driver. It is also undisputed that Liberty Mutual did not subpoena or obtain the claims investigation file of the driver's insurance carrier.

Liberty Mutual cites *State Farm Mutual Automobile Insurance Co. v. Tarantino,* 114 Ariz. 420, 561 P.2d 744 (1977), to support its claim that notice was so untimely as to vitiate coverage. *Tarantino* is inapposite. That case involved a claim for UM benefits by a police officer, Tarantino, who was injured in a motor vehicle accident while on duty. Neither the liable driver nor the owner of the involved vehicle had insurance. Tarantino filed a worker's compensation claim. Four-and-one-half years after the accident, Tarantino submitted a claim to his insurance company for UM benefits. The insurance company refused to pay, alleging Tarantino's failure to notify it of the loss "as soon as practicable" absolved it of any duty to pay benefits.

However, on appeal Tarantino did not controvert the insurance company on the issue of breach based on failure to provide timely notice. Therefore, the appellate court as-

---

2. Because we hold the insureds provided Liberty Mutual notice of the UIM claim within one month of their settlement with the driver-at-fault, we do not address the issue of whether Joshua's minority tolls the requirement for notice to Liberty Mutual. Determination of that issue must await another day.

sumed that Tarantino had conceded the notice issue. *Id.* at 422, 561 P.2d at 746. In the instant case, Liberty Mutual maintains the insureds did not comply with the notice provision in the policy. The insureds, in contrast, strongly maintain they complied with the provision by giving notice to Liberty Mutual almost immediately after settling their claim with the driver-at-fault. *See Washington v. Milbank Ins. Co.,* 562 N.W.2d 801 (Minn.1997). Therefore, in contrast to *Tarantino,* notice is a disputed legal question on appeal here.

Furthermore, the *Tarantino* court merely held the policy's requirement that notice be given "as soon as possible" was not void as against Arizona's statutory policy allowing claimants up to six years to sue on a UIM claim. The court held the notice requirement was intended to afford an insurance company the opportunity to investigate promptly the facts surrounding an accident and to determine whether to settle or litigate the claim. *Id.* at 423, 561 P.2d at 747. Therefore, *Tarantino* does not support Liberty Mutual's position.

Instead, we look to *Lindus v. Northern Insurance Co.,* 103 Ariz. 160, 438 P.2d 311 (1968), wherein the court held that an insured's failure to give notice does not relieve an insurer of its contractual liability when an insured fails to give notice unless the insurer can demonstrate prejudice due to the delay. *See also Globe Indem. Co. v. Blomfield,* 115 Ariz. 5, 562 P.2d 1372 (App.1977). *Lindus* is the seminal case in Arizona on the enforceability of a notice of loss clause when notice is a condition precedent to payment of benefits. In *Lindus,* an injured plaintiff sued the tortfeasor and obtained a judgment. The tortfeasor's insurance carriers—a comprehensive homeowners' policy carrier and an automobile liability policy carrier—failed to defend and later refused to pay the judgment. The plaintiff sued for declaratory judgment, and the carriers defended on lack of notice. The plaintiff in *Lindus* provided one carrier with notice seventeen months after the accident and the other carrier with notice two years after the accident. The trial court held the insured failed to notify the carriers as soon as practicable as required by the policies. *Lindus,* 103 Ariz. at 164, 438 P.2d at 315.

On appeal, the Arizona Supreme Court held the lack of notice did not defeat the claim because the insurers had failed to show any actual prejudice resulting from the delay. *Id.* Similarly, in *Blomfield,* the court held that mere delay is not sufficient to show prejudice to an insurance carrier. 115 Ariz. at 7, 562 P.2d at 1374. In *Zuckerman v. Transamerica Insurance Co.,* 133 Ariz. 139, 650 P.2d 441 (1982), the court held that it would not enforce a notice clause when to do so would defeat the basic intent of the parties to the insurance transaction. In considering the enforceability of such provisions, a court must look at whether the insurer has shown prejudice caused by the delay. *Id.* at 145, 650 P.2d at 448. Liberty Mutual bears the burden of establishing prejudice. *Maryland Casualty Co. v. Clements,* 15 Ariz.App. 216, 222, 487 P.2d 437, 443 (1971). Delay alone does not establish prejudice. *Blomfield,* 115 Ariz. at 7, 562 P.2d at 1374.

The driver's insurance carrier investigated the accident. The driver's deposition was taken three years after the accident. He admitted he was speeding and was aware children would be in the residential area where the accident occurred. Therefore, liability was not contested at arbitration. While the record reflects that the investigation conducted by the police officer was not comprehensive, Liberty Mutual has failed to demonstrate that a more complete investigation would have resulted in a liability defense.

Additionally, Liberty Mutual's claim of prejudice focuses on the argument that, when it hired an accident reconstructionist three years after receiving notice of the UIM claim, he could not reconstruct the accident adequately. However, Liberty Mutual has failed to demonstrate it would have undertaken a timely investigation if immediately informed of the accident. Moreover, Liberty Mutual has not shown that a reconstruction of the accident would have been feasible. The child's bicycle was removed to the child's home before the investigating officer arrived at the scene of the accident. The only non-party witness to the accident was Joshua's

nine-year-old sibling, whom the investigating officer interviewed at the time of the accident.

Further, Joshua's injuries seemed relatively minor at first. He was treated overnight in a hospital for a head injury and released the next day. Joshua's significant brain damage and resultant learning disabilities only became manifest when he matured and began attending school.

We hold that Liberty Mutual, as the UIM carrier, is the functional equivalent of an excess carrier. Liberty Mutual had the burden to demonstrate prejudice due to lack of notice. Nevertheless, Liberty Mutual did not present any evidence that, had it immediately been informed of the accident by the insureds, it then would have undertaken an investigation of the accident. No evidence demonstrates a policy or practice by Liberty Mutual of conducting detailed claims investigations, hiring accident reconstructionists, interviewing witnesses or requiring injured claimants to submit to medical examinations in cases such as this. Liberty Mutual did not even subpoena the liability carrier's investigation file. Although Liberty Mutual hired an expert accident reconstructionist eight years after the accident, and three years after receiving notice of the accident, this fact alone does not establish prejudice.

Liberty Mutual has not made a sufficient showing of prejudice due to the delay in receiving notice. *See Blomfield,* 115 Ariz. at 7, 562 P.2d at 1374 (when insurer did not adequately demonstrate existence of disputed facts as to prejudice, trial court's ruling that delayed notice of an accident did not extinguish coverage was upheld). Accordingly, we affirm the trial court's grant of summary judgment on notice.

## ATTORNEYS' FEES

■ The trial court awarded attorneys' fees and costs incurred during the arbitration and both declaratory judgment actions to the insureds. Both parties now request attorneys' fees on appeal. Because the litigation has been so extensive, this court affirms the trial court's award of attorneys' fees to the insureds for all proceedings below. The in-

sureds request attorneys' fees and costs on appeal pursuant to A.R.S. section 12–341.01 and the insurance contract. Because the insureds prevailed as cross-appellees, not as appellants, we hold that the parties must bear their own fees and costs on appeal.

## CONCLUSION

An arbitration appeal clause is enforceable in an automobile UIM policy because such provisions are in accord with the goals of arbitration and this state's strong public policy favoring arbitration. Therefore, we affirm the trial court's denial of the insureds' Motion for Summary Judgment on the arbitration appeal provision. We affirm the trial court's ruling that the insureds did not breach the notice provision in the UIM policy. We also affirm the trial court's award to the insureds of all attorneys' fees and costs incurred in the two declaratory judgment actions and in the arbitration. We remand the case to the trial court for further proceedings not inconsistent with this opinion.

EHRLICH, P.J., and WEISBERG, J., concur.