Argued and submitted February 2, reversed and remanded May 17, respondent's
motion for reconsideration allowed by opinion September 6, 1995
See 136 Or App 532 (1995)

Peggy LIND,
*Respondent,*

*v.*

ALLSTATE INSURANCE COMPANY,
*Appellant.*

(9312-08151; CA A83422)

895 P2d 327

I. Franklin Hunsaker argued the cause for appellant. With him on the briefs were Jeffrey S. Eden and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

James N. Esterkin argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from a judgment enforcing a $72,000 arbitration award in favor of plaintiff under the uninsured motorist (UM) coverage of her automobile insurance policy issued by defendant. Defendant argues that, under the express terms of the insurance contract and Article I, section 17, of the Oregon Constitution, it was entitled to a jury trial on plaintiff's claim. We reverse and remand.

Plaintiff's insurance policy provided $100,000 in coverage for personal injuries caused by uninsured motorists. The policy also contained the following provision:

**"If We Cannot Agree**

"If the person insured or we don't agree on that person's right to receive any damages or the amount, then upon the written request of either, the disagreement will be settled by arbitration. Arbitration will take place under the rules of the American Arbitration Association unless the person insured or we object.

"* * * * *

"Regardless of the method of arbitration, any award not exceeding the limits of the Financial Responsibility law of Oregon,[1] will be binding and may be entered as a judgment in a proper court.

"*Regardless of the method of arbitration, when any arbitration award exceeds the Financial Responsibility limits in the State of Oregon, either party has a right to trial on all issues in a court of competent jurisdiction.* This right must be exercised within 60 days of the award. Costs, including attorney fees, are to be paid by the party incurring them." (Emphasis supplied.)

In December 1991, plaintiff was injured in an accident involving an uninsured driver. She submitted a claim to defendant under her UM coverage, but defendant declined to provide coverage. Consequently, in January 1993, plaintiff wrote to defendant demanding arbitration. The parties then proceeded to arbitration, which resulted in a $72,000 award for plaintiff.

---

[1] Oregon's financial responsibility law limit for bodily injury to or death of one person in any one accident is $25,000. ORS 806.070(2)(a).

When defendant refused to pay the award, plaintiff brought an action under ORS 36.350 to enter the arbitration award as a judgment. Defendant filed exceptions to the award, asserting that, under the above emphasized language, it had the right to a trial on all issues because the arbitration award exceeded the $25,000 limit of Oregon's financial responsibility law. Plaintiff moved for an order striking defendant's exceptions to the arbitration award and directing that the award be entered as a judgment. In so moving, plaintiff acknowledged that, although the emphasized provision purported to render arbitration awards of more than $25,000 nonbinding, that provision was invalid both because it violated ORS 742.504(10) and because it was generally void as against public policy. Defendant responded that a judgment enforcing the award would violate its right to a jury trial guaranteed by Article I, section 17, of the Oregon Constitution.[2] The trial court agreed with plaintiff and entered a judgment enforcing the arbitration award.

■    On appeal, the parties reiterate their arguments. As amplified below, we agree with defendant that the disputed policy provision is enforceable and does not violate ORS 742.504(10), because, to the extent that statute renders UM arbitration awards binding against nondemanding parties, it violates Article I, section 17, of the Oregon Constitution. *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987).

ORS 742.504(10) provides:

"Every policy required to provide the coverage specified in ORS 742.502 [uninsured and underinsured motorist coverage] shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions:

"* * * * *

---

[2] Article I, section 17, of the Oregon Constitution provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

"(10) If any person making claim hereunder and the insurer do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this coverage, *then, in the event the insured or the insurer elects to settle the matter by arbitration, the arbitration shall take place under the arbitration laws of the State of Oregon and any judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof* provided, however, the costs to the insured of the arbitration proceeding shall not exceed $100 and that all other costs of arbitration shall be borne by the insurer. * * * *Such person and the insurer each agree to consider themselves bound and to be bound by any award made by the arbitrators pursuant to this coverage in the event of such election.*" (Emphasis supplied.)

Plaintiff asserts that the arbitration provision of defendant's UM policy is "less favorable * * * to the insured" than that described in ORS 742.504(10), and, hence, is unenforceable. In particular, plaintiff asserts that the policy, by providing that arbitration awards of $25,000 or less are binding, but that those exceeding $25,000 are not, creates a "heads, I win; tails you lose" mechanism for the insurer, which is less favorable to the insured than the statutory prescription that all UM arbitration awards are binding on both parties.

Defendant does not dispute that its arbitration provision is inconsistent with ORS 742.504(10). However, it asserts that, to the extent the statute renders UM arbitration awards final and binding on the party who did not initiate arbitration, it is unconstitutional. Defendant's argument rests on *Molodyh*.

In *Molodyh*, the plaintiff owned property that was damaged by a fire but insured under a fire insurance policy issued by the defendant. That policy included a statutorily mandated appraisal clause:

"In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall

first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on the request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss." ORS 743.648 (1987) (renumbered ORS 742.232 in 1989).

The plaintiff and the defendant could not agree on the amount of the plaintiff's loss and proceeded to arbitration.[3] The plaintiff was not satisfied with the appraisal result and filed an action in circuit court to have a jury determine the amount of the loss. However, the circuit court granted the defendant's motion for summary judgment on the ground that the appraisal award was binding on the parties. We reversed, holding that the mandatory nature of the appraisal provision violated Article I, section 17, of the Oregon Constitution, *Molodyh v. Truck Insurance Exchange*, 77 Or App 619, 714 P2d 257 (1986), and the Supreme Court affirmed. 304 Or at 290.

The Supreme Court's constitutional analysis focused on two considerations. First, was the statutory appraisal process permissive or mandatory? That is, did the statute require that some, or all, of the parties participate in the process? Second, was the resulting appraisal binding with respect to mandatory participants? With respect to the first issue, the court concluded:

"[A]t least initially, the appraisal provision is permissive. That is, litigation may be commenced without invocation of the appraisal process. It is not a condition precedent to litigation and compliance with the appraisal provision is not required by the policy or statute to litigate a claim. * * * It is only when one party demands an appraisal that the process

---

[3] It is unclear which party demanded the appraisal in *Molodyh. Compare* 304 Or at 292 n 3 ("[T]he record is not clear as to who 'demanded' the appraisal.") with 304 Or at 300 (suggesting that plaintiff demanded the arbitration). In all events, if the plaintiff did demand arbitration, the court assumed that such a demand did not waive his constitutional challenge, because he relied on *Marcotte v. Farmers Insurance Co.*, 66 Or App 928, 675 P2d 1118 (1984), which erroneously indicated that the appraisal process was a condition precedent to litigation. 304 Or at 300.

becomes mandatory and, to that extent, becomes a condition precedent to sustaining any claim in court. *To the demanding party the process is permissive. However, to the non-demanding party the process is mandatory, once invoked. Thus, for purposes of constitutional analysis, the process is mandatory for the non-demanding party."* *Molodyh*, 304 Or at 298 (emphasis supplied).

The court next concluded that, if the appraisal result were binding, then, with respect to the nondemanding party, the appraisal statute and corresponding contractual provision would violate Article I, section 17:

"Part of the appraisal provision (both statute and policy) states that the appraisal award 'shall determine the amount of actual cash value and loss.' Although not free from doubt, the provision appears to contemplate that the award is binding. * * *

"As to the demanding party, because the appraisal provision is permissive as to that party, the conclusion that the award is binding does not offend the constitutional right to trial by jury. The party demanding the appraisal cannot be heard to complain if unhappy with the award. The appraisers are a tribunal of his own choice and the award is binding upon him. *However, to so conclude in respect of the non-demanding party, to which the provision is mandatory, would offend the right to jury trial. One party may not unilaterally decide to have someone other than a jury determine the issues and thereby destroy the other's right to a jury trial."* *Id.* at 299 (emphasis supplied).

Nonetheless, to "save [the appraisal statute] from running afoul of Article I, § 17," the court invoked the "presumption that the legislature did not intend to violate the constitution," and held that the statute was not intended to render the appraisal binding as to nondemanding parties. *Id.*

Consistent with *Molodyh*, the constitutionality of ORS 742.504(10) under Article I, section 17, depends on whether: (1) the statutorily described arbitration process is mandatory for some, or all, of the participants; and (2) the arbitration award is binding with respect to those mandatory participants. If the response to both inquiries is "yes," under

*Molodyh*, the statutory requirement of binding arbitration is unconstitutional as applied to the mandatory participants.[4]

As with the appraisal provision in *Molodyh*, the arbitration procedure established in ORS 742.504(10) is initially permissive for the demanding party, but is mandatory for the nondemanding party. The statute does not mandate arbitration for all disputes, but provides that the parties must arbitrate only "in the event the insured or insurer elects to settle the matter by arbitration." Although either the insured or the insurer can opt to litigate, rather than arbitrate, a disputed UM claim so long as litigation is commenced before the other party demands arbitration, once one party demands arbitration, the other party must participate in the arbitration. Thus, under ORS 742.504(10), arbitration is mandatory with respect to the nondemanding party — in this case, defendant.

ORS 742.504(10) expressly prescribes that UM policies provide that arbitration awards are to be binding against both the demanding and the nondemanding parties: "[The insured] and the insurer *each* agree to consider themselves bound and to be bound by any award made by the arbitrators[.]" (Emphasis supplied.) Thus, the statute is both mandatory and binding to nondemanding parties. It permits one party, by demanding UM arbitration, to "unilaterally decide to have someone other than a jury determine the issues and thereby destroy the other's right to trial by jury." *Molodyh*, 304 Or at 299.

We conclude, accordingly, that ORS 742.504(10), by rendering UM arbitration awards binding against nondemanding parties, violates Article I, section 17.[5] Consequently, the apparent conflict between the statute and the

---

[4] Plaintiff asserts that Article I, section 17, does not apply to this case, because UM coverage "was unknown in Oregon until 1959," and, as noted in *Molodyh*, the right to a jury trial is guaranteed only to those cases " 'wherein the right was customary at the time the constitution was adopted or in cases of like nature.' " *Molodyh*, 304 Or at 295. Plaintiff categorizes defendant's putative claim too restrictively. Defendant seeks to litigate a claim under a contract to provide insurance, and "[t]he jury traditionally has determined whether a breach occurred and the consequent amount of damages in a contract action." *Id.* at 296.

[5] Unlike the appraisal statute in *Molodyh*, which was arguably ambiguous, ORS 742.504(10) is precise and explicit. Consequently, we cannot invoke the "saving" principle, which underlies *Molodyh's* ultimate disposition. *See Merrick v. Board of Higher Education*, 116 Or App 258, 263, 841 P2d 646 (1992) (court will construe

arbitration provision of defendant's policy is illusory with respect to defendant's claim. Because the arbitration award exceeded $25,000, defendant was contractually entitled to a jury trial on plaintiff's claim.

■    Finally, we reject plaintiff's "public policy" arguments. Relying primarily on authority from other jurisdictions, plaintiff argues that the contractual arbitration provision, which allows trial *de novo* for awards greater than $25,000 but binds the parties to awards of $25,000 or less, is grossly unfair to insureds[6] and violates a generic public policy of favoring arbitration and the prompt settlement of claims. Whatever the propriety of the provision rendering awards of $25,000 or less binding on all parties, the only issue presented here pertains to the provision that preserves the right to a jury trial on claims yielding arbitration awards in excess of $25,000.[7] That provision, which fully accords with Article I, section 17, does not violate public policy.

Reversed and remanded.

---

statute so that it conforms with constitutional requirements "unless that construction is inconsistent with legislative intent or the express wording of the statute").

[6] Plaintiff asserts that the arbitration clause is unfair because it allows defendant to challenge "high" arbitration awards (those over $25,000) while binding insureds to "small" awards.

[7] Because of the circumstances of this case, we need not, and do not, address whether that portion of defendant's policy that renders arbitration awards of $25,000 or less binding on nondemanding parties is impermissibly "less favorable" to the insured. Similarly, we do not consider whether a policy provision that rendered an arbitration award nonbinding as to an insurer who *demanded* arbitration might be impermissibly "less favorable" to the insured. Finally, we do not consider whether an insurer can, through a voluntary contractual undertaking, as opposed to statutory compulsion, choose to bind itself to arbitration decisions regardless of its status as a nondemanding party.