Argued and submitted September 10, 2008, reversed and remanded April 1, 2009

## Robert BONDS,
*Plaintiff-Respondent,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
*Defendant-Appellant.*

Multnomah County Circuit Court
051213375; A134011

205 P3d 45

Thomas M. Christ argued the cause for appellant. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Joel S. DeVore argued the cause for respondent. With him on the brief was Luvaas Cobb.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

In this case, we must decide whether defendant, Farmers Insurance Company, "formally instituted arbitration proceedings," ORS 742.504(12)(a)(B), by sending to plaintiff, its insured, a letter stating, "Should we disagree on the liability/damages owed by the underinsured motorist, [defendant] consents to submit this matter to binding arbitration," and then notifying plaintiff that it did, in fact, disagree on damages. The trial court ruled that the letter and subsequent notice formally instituted arbitration proceedings and that, therefore, they tolled the two-year limitation period during which plaintiff had to act in order to preserve his cause of action. ORS 742.504(12)(a)(B). Defendant appeals, and we reverse and remand.

The relevant facts are not in dispute. Plaintiff is insured under an automobile policy with defendant. The policy contains underinsured motorist (UIM) coverage, that is, coverage for the policyholder's damages over and above the liability limits of the driver whose action injured the policyholder. On July 2, 2003, plaintiff was injured in an accident that he alleges was caused by another driver. On March 29, 2005, plaintiff informed one of defendant's adjusters that he had settled with that driver for the limit of her liability coverage, that the settlement did not adequately compensate him for his damages, and that he intended to seek UIM coverage from defendant.

The same day, defendant sent plaintiff two letters. One acknowledged plaintiff's UIM claim and stated, "Should we disagree on the liability/damages owed by the underinsured motorist, [defendant] consents to submit this matter to binding arbitration." The second letter stated that defendant disagreed about the extent of damages owed.

On July 6, 2005—two years and four days after the accident—defendant's adjuster called plaintiff's attorney to inquire whether he had elected to litigate the UIM claim against defendant. When plaintiff's attorney told the adjuster that plaintiff had not filed an action, the adjuster remarked that the time for resolving the claim, whether by litigation or arbitration, had lapsed under the UIM terms of

the policy, which are identical for all relevant purposes to the "model" terms established by ORS 742.504(12) (2003):[1]

"(a)   The parties to this coverage agree that no cause of action shall accrue to the insured under this coverage unless within two years from the date of the accident:

"(A)   Agreement as to the amount due under the policy has been concluded;

"(B)   The insured or the insurer has formally instituted arbitration proceedings;

"(C)   The insured has filed an action against the insurer in a court of competent jurisdiction; or

"(D)   Suit for bodily injury has been filed against the uninsured motorist in a court of competent jurisdiction and, within two years from the date of settlement or final judgment against the uninsured motorist, the insured has formally instituted arbitration proceedings or filed an action against the insurer in a court of competent jurisdiction."

The adjuster's statement asserting that plaintiff's time to proceed had lapsed was based on the theory that more than two years had passed since the accident and none of the four events set out in subparagraphs (A) through (D) had occurred. The next day, plaintiff's attorney called the adjuster and stated that plaintiff would "accept" defendant's "offer" to arbitrate the UIM claim, referring, apparently, to defendant's March 2005 letters. The adjuster replied that the UIM claim was time barred because the letters did not amount to the formal institution of arbitration. Plaintiff brought this action for a judicial declaration that his claim was timely and for an order compelling defendant to arbitrate. The trial court agreed with plaintiff that defendant's March 2005 letters formally instituted arbitration and granted him the relief that he sought. This appeal ensued.

■       Because the policy provision at issue in this case follows the model set out in ORS 742.504(12)(a), and because the parties agree that none of the events in subparagraphs (A), (C), or (D) occurred, our inquiry requires us to construe

_____

[1] The statute refers to "uninsured" motorists but also includes "underinsured" motorist coverage. ORS 742.502(4). Hereafter, all statutory references, unless otherwise indicated, refer to the 2003 statutes.

the phrase in subparagraph (B) of that statute, "formally instituted arbitration proceedings." On appeal, defendant argues that an arbitration proceeding is "formally instituted" under ORS 742.504(12)(a)(B) only if two prerequisites occur. First, the insured and the insurer must agree to settle the dispute by arbitration, which requires offer and acceptance. That action is the "institution" of arbitration proceedings. Second, one party must comply with the procedure for initiating arbitration set out in ORS 36.635(1). That action satisfies the "formally" requirement. Because the parties did not complete these steps, defendant argues, they did not formally institute arbitration proceedings within the two-year time limit set out in ORS 742.504(12)(a), and plaintiff's claims are time barred. Plaintiff, in response, argues that, because the two-year time limit is met when "[t]he insured *or* the insurer has formally instituted arbitration proceedings," ORS 742.504(12)(a)(B) (emphasis added), the statute requires no more than a unilateral offer to arbitrate, and defendant's letter constituted such an offer; further, the "formally" requirement was met because defendant's letters satisfied the terms of the parties' insurance contract for officially beginning the arbitration process. As explained below, we conclude that each side is half-right. Plaintiff is correct that the formal institution of arbitration proceedings does not require offer and acceptance; either party can take that step. Defendant is correct, however, that neither party took the actions necessary to institute proceedings "formally." Thus, no formal institution of arbitration proceedings occurred before the two-year time limit elapsed, and the trial court should have declined to so declare.

Defendant's first argument—that formal institution of arbitration can occur only if the parties both agree to arbitrate—cannot be reconciled with the plain meaning of the statute. ORS 742.504(12)(a)(B) specifies that the time limit is tolled if "the insured *or* the insurer" formally institutes arbitration. (Emphasis added.) Subparagraph (D) also refers to "formally institut[ing] arbitration proceedings" and, again, specifies that "the insured" can accomplish that action unilaterally. *Sanderson v. Allstate Ins. Co.*, 164 Or App 58, 989 P2d 486 (1999), although not precisely on point, also supports the conclusion that a party can formally institute arbitration

proceedings by unilateral action. Under the version of ORS 742.504(12) relevant to that case, an insured could not meet the two-year deadline by bringing an action against his or her UIM insurer; the only options were to sue the tortfeasor, reach an agreement with the UIM insurer, or "formally institute[ ] arbitration proceedings." *Sanderson*, 164 Or App at 61. The issue before the court was whether that statute had unconstitutionally deprived an insured of the right to a jury trial, and the court held that it had. *Id.* at 65. (A subsequent amendment to ORS 742.504 cured that constitutional defect by adding a provision permitting an insured to file an action against the UIM insurer in court.) In the process of reaching its conclusion, the court accepted the defendant's argument "that the phrase 'formally institute[,]' as used in ORS 742.504(12)(c) [1995], permits a claimant to commence arbitration without intending to complete it." *Sanderson*, 164 Or App at 62. "[T]he language of the statute," the court reasoned, "does not *prevent* either an insured or an insurer from commencing arbitration without intending to complete it." *Id.* at 63 (emphasis in original). The court, in other words, equated "commencing" formal arbitration with "instituting" formal arbitration, and concluded that the act could be performed unilaterally.

Defendant contends that an amendment to ORS 742.504 enacted after *Sanderson* negates any implication in the case that mutuality is unnecessary. The amended version of the statute states,

> "(10) If any person making claim hereunder and the insurer * * * do not agree as to the amount of payment which may be owing under this [UIM] coverage, then, in the event the insured and the insurer elect by mutual agreement at the time of the dispute to settle the matter by arbitration, the arbitration shall take place under the arbitration laws of the State of Oregon or, if the parties agree, according to any other procedure."

According to defendant, that amendment "now provides for arbitration only upon 'mutual agreement' of the parties." We disagree. The amendment provides only that, if there is a mutual agreement, certain arbitration procedures must be used. It does not contradict the clear and unambiguous language in ORS 742.504(12)(a)(B), under which either party

may institute formal arbitration within the two-year limitation period.

Sanderson, then, as well as the plain language of ORS 742.504(12)(a)(B), defeat defendant's argument that formal arbitration proceedings cannot be instituted unilaterally. That conclusion does not necessarily mean that, in this case, defendant's letter *did* unilaterally institute arbitration. However, whether it did or not does not affect the outcome of this case. That is so because, as defendant maintains, merely instituting arbitration proceedings is not sufficient; the institution must also be formal. In *Sanderson*, 164 Or App at 63, the court interpreted "formal" in the predecessor to ORS 742.504(12)(a)(B) to mean "according to prescribed or official terms and rules." At the time relevant to this case—that is, in 2005 when defendant informed plaintiff that it "consent[ed] to submit" plaintiff's claim to binding arbitration—the "prescribed or official terms and rules," *Sanderson*, 164 Or App at 63, governing the institution of arbitration were set out in ORS 36.635(1). Under that statute, one party must provide notice

> "in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of agreement, by certified mail, return receipt requested and obtained, or by service as authorized for summons under ORCP 7 D. The notice must describe the nature of the controversy and the remedy sought."

In the present case, neither party initiated arbitration in the manner prescribed by ORS 36.635(1), and the parties did not agree to some other procedure. Because defendant's letter did not conform to "the formal process of arbitration," *Sanderson*, 164 Or App at 64, and the parties did not otherwise satisfy ORS 742.504(12)(a), defendant did not formally institute arbitration proceedings for purposes of the two-year time limit.

■ Plaintiff maintains that, because ORS 36.635(1) was not in effect at the time of the accident, it does not apply to this case. We disagree. The statute is part of the Uniform Arbitration Act, and, although that act was not signed into law until after the accident, it applies to all arbitration agreements "whenever made." Or Laws 2003, ch 598, § 3(3). In any

event, even if no statute defined how a party could formally institute arbitration proceedings, defendant's letters did not do so. In *Sanderson*, 164 Or App at 63-64, this court stated, "*Formal* institution of arbitration must be official. The institution of arbitration requires more than mere notice; it requires the establishment and setting up of the formal process of arbitration." (Emphasis in original.) Defendant's letters to plaintiff were mere notice; they may have alerted plaintiff to the fact that, *if* plaintiff wanted arbitration, defendant *would* agree, but that is a far cry from "the establishment and setting up of the formal process of arbitration." *Id.*

In sum, defendant's letters to plaintiff did not formally institute arbitration proceedings. Because plaintiff did not perform any of the acts that could have tolled the running of the two-year limitation period for filing a UIM claim against defendant, the trial court erred in granting plaintiff the relief that he sought.

Reversed and remanded.