Argued and submitted March 1, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings October 14, 2010

Robert BONDS,
*Petitioner on Review,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
*Respondent on Review.*

(CC 051213375; CA A134011; SC S057422)

240 P3d 1086

Joel S. DeVore, Luvaas Cobb, Eugene, argued the cause and filed the brief for petitioner on review.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondent on review.

Meagan A. Flynn, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

Durham, J., filed a dissenting opinion in which De Muniz, C. J., joined.

.

## WALTERS, J.

In this case, we decide that, to "formally institute arbitration," and thereby satisfy the timelines set forth in ORS 742.504(12)(a)(B) and maintain a claim for under-insured motorist (UIM) benefits, an insured or an insurer must expressly communicate to the other party that the initiating party is beginning the process of arbitrating a dispute. We further decide that two letters written by defendant to plaintiff in this case did not meet that standard and that plaintiff's claim for UIM benefits is therefore time-barred.

On July 2, 2003, plaintiff was injured in an automobile collision caused by the negligence of another driver. Plaintiff was insured under an automobile policy with Farmers Insurance Company (defendant) and was entitled to UIM coverage. In March 2005, plaintiff's lawyer told defendant that he had reached a settlement agreement with the other driver, that the settlement did not adequately cover plaintiff's damages, and that plaintiff therefore intended to seek UIM coverage from defendant for the remainder. Subsequently, a claims representative for defendant sent plaintiff's lawyer two letters. The first letter acknowledged plaintiff's UIM claim and stated, "Should we disagree on the liability/damages owed by the underinsured motorist, [defendant] consents to submit this matter to binding arbitration." The second letter stated that defendant disagreed about the extent of the damages owed—in particular, the representative stated that plaintiff already had been compensated for his injuries through the other driver's insurance coverage—and that plaintiff was not entitled to UIM benefits. The representative offered, however, to consider additional information about plaintiff's alleged injuries. Both letters likely arrived on the same day.[1]

On July 6, 2005—two years and four days after the accident—defendant's claims representative called plaintiff's lawyer to ask whether he had filed an action against defendant regarding the UIM claim. When plaintiff's lawyer said

---

[1] The second letter is not in the record. The representative testified to the contents of the letter at trial.

that he had not, the representative and the lawyer disagreed about whether the time for filing such an action had expired. The next day, plaintiff's lawyer called the representative and, referring to the representative's March 2005 letters, stated that plaintiff would accept defendant's offer to arbitrate. When defendant asserted that plaintiff's UIM claim was time-barred, plaintiff sought a judicial declaration to the contrary. Following a bench trial, the trial court concluded that defendant had formally instituted arbitration proceedings within two years of the date of the accident and ordered defendant to arbitrate.

Defendant appealed. The issue before the Court of Appeals focused on the action required by ORS 742.504(12)(a)(B), which governs how parties to an insurance contract can initiate arbitration respecting the contract:

> "The parties to this coverage agree that no cause of action shall accrue to the insured under this coverage unless within two years from the date of the accident:
>
> "* * * * *
>
> "(B) The insured or the insurer has *formally instituted arbitration proceedings*[.]"

(Emphasis added.) Defendant argued that, to formally institute arbitration proceedings under ORS 742.504(12)(a)(B), the parties must follow a sequential two-step process: first, the parties must reach a mutual agreement to arbitrate; and second, one of the parties must give notice to arbitrate in compliance with the "arbitration laws of the State of Oregon," specifically Oregon's Uniform Arbitration Act. In a written opinion, the Court of Appeals decided that mutual agreement to arbitrate is not a prerequisite to a party's formal institution of arbitration proceedings. *Bonds v. Farmers Ins. Co.*, 227 Or App 185, 205 P3d 45 (2009). However, the court also decided that the party instituting arbitration proceedings must send notice of arbitration in accordance with Oregon's Uniform Arbitration Act and that defendant's letters were insufficient to meet the requirements of that act. *Id.* at 191. We allowed plaintiff's petition for review, and, for the reasons we explain, we affirm the decision of the Court of Appeals, but on different grounds.

We begin our analysis with the text of ORS 742.504.[2] ORS 742.504 sets out a comprehensive model UIM policy. Subsection (12) of that statute provides that the accrual of a claim for uninsured and underinsured motorist benefits is conditioned on the occurrence of one of several events within two years of the date of a motor vehicle accident. One of those events is that "[t]he insured or the insurer has formally instituted arbitration proceedings[.]"[3]

Defendant argues that we can determine the meaning of ORS 742.504(12)(a)(B) by considering its context and that neither party may formally institute arbitration proceedings under ORS 742.504(12)(a)(B) until both parties have agreed to arbitrate under ORS 742.504(10). That subsection provides, in part:

"If any person making claim hereunder and the insurer do not agree that the person is legally entitled to recover damages from the owner or operator of an uninsured vehicle because of bodily injury to the insured, or do not agree as to the amount of payment that may be owing under this coverage, then, *in the event the insured and the insurer elect by mutual agreement* at the time of the dispute to settle the matter by arbitration, the *arbitration shall take place* as described in section 2, chapter 328, Oregon Laws 2007."

(Emphases added.) Plaintiff agrees that, under subsection (10), arbitration cannot "take place" absent mutual agreement

---

[2] *Former* ORS 742.504 (2003) was in effect at the time of the accident. We refer to the current version of the statute because the operative language has not changed materially. We note amendments to the statute where relevant to the analysis.

[3] In this case, defendant incorporated the provisions of ORS 742.504(12)(a)(B) in its insurance contract with plaintiff. Insurers must include, in their UM/UIM policies, coverage no less favorable to the insured than that set forth in the provisions of the statutory comprehensive model policy. ORS 742.504; *Vega v. Farmers Ins. Co.*, 323 Or 291, 301-02, 918 P2d 95 (1996). Insurers may include terms that vary from the model policy only by excluding or softening terms that disfavor insureds or by adding extraneous terms that are neutral or that favor insureds. *Vega*, 323 Or at 301-02. In this case, defendant issued a UM/UIM policy to plaintiff that incorporated the time limitations of the statutory model policy. Therefore, it is the terms of the model policy that are operative here. *See id.* at 296 (terms of model policy not applicable unless included in contract with insured); *North River Insur. v. Kowaleski*, 275 Or 531, 534-35, 551 P2d 1286 (1976) (terms of statutory model policy inoperative unless included in contract with insured). Of course, when we interpret such statutorily imposed terms, we are seeking to identify the legislative policy choice that is represented in the statute.

to arbitrate, but contends that, under subsection (12), one party acting alone may initiate the arbitration process and thereby preserve a claim for benefits. Both parties point us to the enactment history of subsections (10) and (12) to support their positions.

In 1967, when the legislature originally enacted the forerunner to those subsections, either the insured or the insurer could elect to arbitrate their dispute, and election by one bound the other. The predecessor to ORS 742.504(10) provided, in part:

> "[*I*]*n the event the insured or the insurer elects to settle the matter by arbitration, * * * [s]uch person and the insurer each agree to consider themselves bound and to be bound* by any award made by the arbitrators pursuant to this coverage in the event of such election."

*Former* ORS 743.792(10) (1967), *renumbered as* ORS 742.504(10) (1989) (emphasis added). The predecessor to subsection (12) provided:

> "The parties to this coverage agree that no cause of action shall accrue to the insured under this coverage unless *within two years from the date of the accident*:
>
> "(a) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction;
>
> "(b) Agreement as to the amount due under the policy has been concluded; or
>
> "(c) *The insured or the insurer has formally instituted arbitration proceedings.*"

*Former* ORS 743.792(12) (1967), *renumbered as* ORS 742.504(12) (1989) (emphases added).

In 1987, this court determined that a statute that compelled the parties to a fire insurance policy to "accept" the result of a damages appraisal procedure that only one party had invoked deprived the nonconsenting party of the right to a jury trial under Article I, section 17, of the Oregon Constitution. *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295, 744 P2d 992 (1987); *see also Carrier v. Hicks*, 316 Or 341, 352, 851 P2d 581 (1993) (construing ORS 742.504(10)

not to compel arbitration by unwilling party and not to violate right to jury trial). After *Molodyh*, an "arbitration trap" existed. That is, one party could demand arbitration, the parties could arbitrate their dispute, and then the nonelecting party, if dissatisfied with the results in arbitration, could demand that party's constitutional right to a jury trial.

In 1997, in part to "[e]liminate[ ] the trap for the unwary party," the legislature amended subsection (10). Senate Committee on Business, Law and Government, SB 645, May 8, 1997, Ex K, p 1 ("Summary of SB 645-2"). The legislature revised subsection (10) to make an arbitration award binding only upon mutual agreement of the parties:

> "[I]n the event that the insured and the insurer elect by mutual agreement at the time of the dispute to settle the matter by arbitration, the arbitration shall take place under the arbitration laws of the State of Oregon or, if the parties agree, according to any other procedure."

Or Laws 1997, ch 808, § 2. That amendment of subsection (10), defendant contends, demonstrates that the legislature intended that the mutual agreement of the parties be a prerequisite to the institution of arbitration proceedings under subsection (12). Plaintiff's retort is that the legislature did not similarly amend subsection (12) to add a requirement of mutuality, an omission that indicates its intent that a party's unilateral action will be sufficient to meet the timelines imposed by that subsection.

There is merit to the arguments of both parties. Defendant is correct that subsection (12) originally was adopted years before this court announced its decision in *Molodyh*. After *Molodyh*, even if one party elected to arbitrate under subsection (12), the other could avoid binding arbitration by refusing to consent. It is reasonable to conclude that, when the legislature amended subsection (10) in 1997 to explicitly recognize, as required by *Molodyh*, that mutual agreement to arbitrate was necessary to bind the parties to the resulting arbitration award, the legislature also intended that that mutual agreement would occur before institution of arbitration proceedings under subsection (12).

On the other hand, it also is reasonable to conclude that, when the legislature retained without amendment the text that is now subsection (12)(a)(B), it did so intending to continue to permit either party to take the action necessary to meet the time limits that it imposed without also requiring that that party obtain the agreement of the opposing party. The legislature could have been concerned that, if the accrual of an insured's claim depended on the insured obtaining the insurer's agreement to arbitrate, the insurer could, by refusing to consent to arbitration, negate, or at least interfere with, the insured's ability to meet statutory timelines. That argument is supported by the fact that, although the legislature did not amend subsection (12) to require mutual action to institute arbitration proceedings, it did amend subsection (12) to provide that an insured's claim accrues if, within two years from the date of the accident, "[t]he insured has filed an action against the insurer in a court of competent jurisdiction." Or Laws 1997, ch 808, § 2, *codified as* ORS 742.504(12)(a)(C). That the legislature chose to amend subsection (12) in one way but not another is an indication that the legislature consciously chose to continue to permit action by one party alone to "formally institute" arbitration proceedings and satisfy the statutory limitations period.

The legislative history of ORS 742.504 does not provide further guidance as to the legislature's intent, and we therefore rest our decision on the text of subsections (10) and (12) and the purposes that they serve. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We read subsection (10) as identifying rules for conducting arbitration once an agreement to arbitrate has been reached, not as addressing the action necessary to meet the timeliness requirements of subsection (12). Subsection (10) requires arbitration when the parties agree to arbitrate "at the time of the dispute." In the event that the parties reach mutual agreement to arbitrate, subsection (10) provides that the arbitration shall "take place" under the state arbitration laws. "Take place" means "[to] occur" or "[to] happen." *Webster's Third New Int'l Dictionary* 2331 (unabridged ed 2002). In contrast, subsection (12) sets out the circumstances that must exist for a claim for benefits to accrue and explicitly permits either

party, acting alone, to "formally institute" arbitration proceedings.

■ We do not think that, by modifying ORS 742.504(10), the legislature also changed subsection (12) in the same way *sub silentio*. *See* ORS 174.010 (in interpreting statutes, duty of court is not to insert what has been omitted). We therefore hold, as did the Court of Appeals, that, to meet the requirements of ORS 742.504(12)(a)(B), a party need not have obtained the other party's agreement to arbitrate.

■■ The question that remains, and to which we now turn, is the particular action that a party must take to "formally institute" arbitration proceedings. Defendant argues, and the Court of Appeals concluded, that the answer is found in the requirement of subsection (10) that arbitration shall "take place under the arbitration laws of the state of Oregon."[4] Defendant argues, and the Court of Appeals also concluded, that that was a statutory reference to the Uniform Arbitration Act, particularly ORS 36.635(1). However, the Oregon Uniform Arbitration Act applies only to a binding "agreement to arbitrate." *See* Or Laws 2003, ch 598, § 3 (so stating). Under the Uniform Arbitration Act, an agreement to arbitrate is an enforceable and irrevocable agreement that requires the court, upon petition by one party, to order the other party to arbitrate. *See* ORS 36.620 (an agreement to arbitrate generally is enforceable and irrevocable); ORS 36.625(1) (court shall order parties to arbitrate upon showing of an agreement to arbitrate). A contract of insurance that contains the model provisions authorized by ORS 742.504 is not itself a binding agreement to arbitrate. As noted, ORS 742.504(10) requires arbitration only when the parties agree to arbitrate "at the time of the dispute." Because we hold that an agreement to arbitrate is not a prerequisite to formal institution of arbitration proceedings, the Uniform Arbitration Act, which does not apply unless such an agreement has been reached, does not establish the manner in which a party "formally institutes" arbitration proceedings. It follows that

___

[4] In 2007, the legislature removed the reference to the "arbitration laws of the State of Oregon" and substituted reference to "local court rules in the county where arbitration is held." Or Laws 2007, ch 328, §§ 2(2), 5.

we disagree with the contrary conclusion of the Court of Appeals.

Alternatively, defendant argues that "arbitration proceedings are 'formally instituted' when the process of arbitration has begun in accordance with established rules." Defendant relies, for that position, on a Court of Appeals case that analyzed ORS 742.504(12) and purported to define those terms:

> " 'Formal' means 'following or according with established form, custom or rule * * * based on forms and rules, esp. such as are accepted by convention: of or following a prescribed form.' *Webster's Third New Int'l Dictionary*, 893 (unabridged ed 1993). 'Formal' has the opposite meaning of 'informal,' which means 'conducted or carried out without formal * * * or ceremonious procedure: unofficial.' *Id.* at 1160. 'Institute' means 'to originate and get established: set up: cause to come into existence.' *Id.* at 1171. Thus, to 'formally institute' arbitration means to commence and establish arbitration according to prescribed or official terms and rules."

*Sanderson v. Allstate Ins. Co.*, 164 Or App 58, 63, 989 P2d 486 (1999). Consequently, defendant contends, until the parties have agreed to arbitrate, no single party can "commence and establish arbitration according to prescribed or official terms and rules" under *Sanderson* and thereby "formally institute it." Plaintiff responds that the words "formally institute" do not impose a requirement of mutual agreement and that initiating arbitration should be pragmatic and uncomplicated, just like arbitration itself.

We consult, as did the Court of Appeals in *Sanderson*, the dictionary. Although it is true that "formally" can mean according to rule or custom, it also has a simpler, more straightforward meaning, namely, "expressly" or "explicitly." *Webster's* at 893. Although "according to custom or rule" is a possible meaning of the word "formally," that is an unlikely meaning in this context, because the legislature did not specify the custom or rule to which the parties should adhere.[5] We

---

[5] We also have some indication that, in 1997, when the legislature amended ORS 742.504(12), practitioners used a letter that included a "demand for arbitration" to institute arbitration proceedings. *See Lind v. Allstate Ins. Co.*, 134 Or App 395, 397, 895 P2d 327, *modified on recons*, 136 Or App 532, 534-35, 902 P2d 603, *rev den*, 322 Or 362 (1995) (demand for arbitration contained in letters from plaintiff).

conclude that it is more likely that the legislature simply sought to emphasize that the nature of a communication regarding arbitration should be "express" or "explicit."

Likewise, the word "institute" has a more straight-forward meaning than the one that the Court of Appeals suggested in *Sanderson*. "Institute" can indicate bringing something into existence, establishing something, or creating a set of procedures. However, it also may indicate simply a *beginning*: "to set on foot: INAUGURATE, INITIATE." *Webster's* at 1171.

■ Putting the synonyms for "formally" and "institute" together, we conclude that the legislature used the words "formally institute" arbitration proceedings to require that a party "expressly begin" those proceedings. To take the action necessary to satisfy ORS 742.504(12)(a)(B), an insured or insurer expressly must communicate to the other party that the initiating party is beginning the process of arbitrating the dispute. The first step in that process is the party's offer to utilize the arbitration process. Thus, to "formally institute" arbitration proceedings, an insured or an insurer must expressly communicate to the other party that the initiating party offers to arbitrate or otherwise commits to the arbitration process.

■ That said, however, we must address whether defendant's two letters satisfied the requirements of ORS 742.504(12)(a)(B) as we have described them. One letter from defendant said that, "[s]hould [defendant] disagree on the liability/damages owed by the underinsured motorist, [defendant] consents to submit this matter to binding arbitration." The subsequent letter from defendant stated defendant's view that plaintiff already had been compensated for his injuries through other insurance, but specifically noted that defendant was willing to consider additional information.

Although we cannot say that "formal institution" of arbitration proceedings must always occur in a single communication, we think that the word "formal" evidences an expectation that, when a party begins arbitration, the party will do so in an obvious and express way, such as occurs when a party sets forth, either in one document or in multiple documents that are part of a single message, a notice, offer, or

demand for arbitration. Here, plaintiff relies for its argument that defendant formally instituted arbitration proceedings not only on two documents, but also on an inference that, plaintiff asserts, can be drawn from those two documents. Plaintiff contends that, taking the two documents in combination, the trial court correctly concluded that defendant had agreed to arbitrate the dispute if necessary and that defendant's rejection of plaintiff's claim for damages was an indication that arbitration was necessary.

The problem with plaintiff's position, in our view, is that even viewing defendant's letters, as we must, in the light most favorable to plaintiff, *see Liles v. Damon Corp.*, 345 Or 420, 423, 198 P3d 926 (2008) (stating standard of review), defendant did not obviously and expressly state that it was offering to arbitrate. The first letter indicated a willingness to arbitrate, depending on whether a future event—disagreement—occurred.[6] The second letter did not definitively state that a disagreement existed, nor did it mention arbitration.

We do not mean to suggest that the parties must have reached an impasse in negotiations before either party may "institute" arbitration proceedings. A party that files a complaint with a court of competent jurisdiction within two years of the date of a motor vehicle accident satisfies the time

---

[6] Defendant characterized its letter as intended to avoid payment of attorney fees under ORS 742.061(1). ORS 742.061(1) provides, in part, that, subject to certain exceptions,

"if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

ORS 742.061(3) provides one of those exceptions:

"Subsection (1) * * * does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b) *The insurer has consented to submit the case to binding arbitration.*"

(Emphasis added.) Defendant's representative testified, "If we don't consent to binding arbitration and they file suit, then they're entitled to attorney's fees no matter what the award is. So that's why we send that."

limits of ORS 742.504(12)(a)(C) and does so even if the parties are engaged in negotiations. The filing of a complaint, however, serves to begin the litigation process. Similarly, a party that wishes to satisfy the time limits of ORS 742.504(12)(a)(B) by formally instituting arbitration proceedings must explicitly offer to arbitrate or demand arbitration to expressly begin that process. Where, as here, a party's consent to arbitrate is contingent on some future event and that party does not expressly advise or acknowledge to the other party that that event has occurred, no "formal institution" of arbitration proceedings has occurred. We conclude that, on this record, defendant did not "formally institute" arbitration proceedings within two years from the date of the accident as required by ORS 742.504(12)(a)(B) and that plaintiff's claim for UIM benefits was therefore time-barred.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** dissenting.

The question before the court is whether defendant, through two letters to plaintiff's lawyer, "formally instituted arbitration proceedings" under ORS 742.504(12)(a)(B).[1] If defendant did so, then the trial court correctly compelled defendant to participate in arbitration regarding plaintiff's underinsured motorist coverage (UIM) claim. If defendant did not do so, then the trial court erred in requiring the parties to arbitrate their dispute. The majority adopts the latter conclusion. I respectfully disagree.

Before addressing the majority's answer to that ultimate question, I turn first to several intermediate conclusions that, in my view, the majority decides correctly. First, I agree that the arbitration procedures described in ORS

---

[1] That subsection of ORS 742.504 provides:

"(12)(a) The parties to this coverage agree that no cause of action shall accrue to the insured under this coverage unless within two years from the date of the accident:

"* * * * *

"(B) The insured or the insurer has formally instituted arbitration proceedings[.]"

742.504(10) do not bear on the correct meaning of "formally instituted arbitration proceedings" in subsection (12)(a)(B). By its terms, subsection (10) applies only if the insured and the insurer "elect by mutual agreement" to settle their UIM dispute in arbitration. Here, neither the statutorily pre-scribed minimum terms of UIM coverage under ORS 742.504 nor the policy that defendant issued to plaintiff constituted an agreement to arbitrate any UIM dispute. No other agree-ment to arbitrate exists. Consequently, the majority correctly decides that subsection (10) does not help to explain the meaning of "formally instituted arbitration proceedings" under subsection (12)(a)(B).

Second, the majority correctly determines that ORS 742.504(12)(a) contemplates that either the insured or the insurer may formally institute arbitration proceedings uni-laterally, that is, without the participation, consent, or agree-ment of the other party. The term "or" in subsection (12)(a)(B) leaves no doubt that either party may act independently of the other to formally institute arbitration proceedings.

The majority also correctly determines that the Oregon Uniform Arbitration Act (UAA), ORS 36.600 to 36.740, does not govern the question whether the correspon-dence of defendant's claims representative "formally insti-tuted arbitration proceedings" under ORS 742.504(12)(a)(B). The UAA applies generally to arbitration proceedings that are the result of an agreement to arbitrate the underlying dispute. *See* ORS 36.635(1) (describing procedures for initi-ating arbitration between parties to an "agreement to arbi-trate"). As already noted, no agreement to arbitrate exists in this case.

I turn to the majority's analysis of the phrase "formally instituted arbitration proceedings" in ORS 742.504(12)(a)(B). The parties' principal disagreement con-cerns whether a party's offer or consent to participate in arbi-tration qualifies as the formal institution of arbitration proceedings under the statute.[2] According to plaintiff, defen-dant's first letter clearly expressed consent to arbitration but

---

[2] For purposes of this discussion, there is no material difference in the legal consequences that result from an "offer" to participate in arbitration and a "con-sent" to arbitration. Both an "offer" and a "consent" to arbitration, however

that consent was subject to a condition: that there be a disagreement between the parties about the "liability/damages owed by the underinsured motorist." That condition, according to plaintiff, was satisfied when defendant's claims representative, in a second letter, likely received by plaintiff the same day as the first letter, asserted that plaintiff was not entitled to UIM benefits, because the underinsured driver's insurance had fully compensated him for his injuries. Defendant responds that the letters do not convey a consent to arbitration, because the first letter consented to arbitration conditionally and the second letter did not mention arbitration.

I note at this point that there is no doubt that defendant's claims representative intended her two letters to convey defendant's consent to arbitration. Another statute, ORS 742.061(1),[3] authorizes an award of attorney fees against an insurer in certain litigation over an insurance policy. However, subsection (3) of that statute nullifies that authority in

phrased, commit the communicating party to participate in arbitration concerning the underlying dispute.

[3] ORS 742.061 provides, in part:

"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. If the action is brought upon the bond of a contractor or subcontractor executed and delivered as provided in ORS 279B.055, 279B.060, 279C.380 or 701.430 and the plaintiff's recovery does not exceed the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed and allowed to the defendant as part of the costs of the action and any appeal thereon. If in an action brought upon such a bond the surety is allowed attorney fees and costs and the contractor or subcontractor has incurred expenses for attorney fees and costs in defending the action, the attorney fees and costs allowed the surety shall be applied first to reimbursing the contractor or subcontractor for such expenses.

"* * * * *

"(3) Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b) *The insurer has consented to submit the case to binding arbitration.*"
(Emphasis added.)

an action to recover UIM benefits if the insurer, timely and in writing, accepts coverage, leaving in dispute only the under-insured motorist's liability and the insured's damages, and "[t]he insurer has consented to submit the case to binding arbitration." (Emphasis added.)

Defendant's claims representative, Kerry Barton, testified that she intended her letters to convey consent to arbitration to obtain for defendant the protection in ORS 742.061 against an award of attorney fees to plaintiff:

> "[Ms. Barton:] Just whenever I get a * * * UM or UIM claim, I automatically send what we call the binding arbitration letter, and then that went out. And then afterwards, subsequently, I was able to review all the medical records, so a second letter went out. [Plaintiff's lawyer] probably received them both on the same day, but they—they did go out at different times.

> "Q: All right. And in—in the second letter, do you remember whether you stated the company's position with respect to his client's uninsured motorist claim?

> "A: Yes, I did. I reviewed the medical records and, based on my opinion of those records and what they said, I felt that his client had been compensated already for his claim through the underlying policy.

> "* * * * *

> "Q: Ms. Barton, why was the letter sent containing the offer to consent to binding arbitration?

> "A: When we receive notice of a UM or UIM claim, if we notify the plaintiff attorney that we're willing to submit it to binding arbitration, it makes it—and I believe it's within six months of notice of the claim, it makes it so that they're not entitled to attorney fees.

> "If we don't consent to binding arbitration and they file suit, then they're entitled to attorney's fees no matter what the award is. So that's why we send that."

That testimony supports the trial court's observation that, although Ms. Barton may have intended to secure for defendant the protection of ORS 742.061 against an award of attorney fees, her correspondence could be equally effective

168

in formally instituting arbitration proceedings under ORS
742.504(12)(a)(B).[4]

The majority, after consulting dictionary definitions
of "formally" and "institute," concludes that, to formally insti-
tute arbitration proceedings under ORS 742.504(12)(a)(B),
"an insured or insurer must expressly communicate to the
other party that the initiating party offers to arbitrate or
otherwise commits to the arbitration process." 349 Or 152 at
162. The majority thus accepts the trial court's premise that,
in this context, an offer or a consent to arbitrate constitutes a
formal institution of arbitration proceedings. However, the
majority reasons that defendant's second letter was insuffi-
cient to convey defendant's offer to arbitrate because it did
not expressly state that the condition stated in the first letter
had been satisfied:

"The first letter indicated a willingness to arbitrate,
depending on whether a future event—disagreement—
occurred. The second letter did not definitively state that a
disagreement existed, nor did it mention arbitration.

"* * * [A] party that wishes to satisfy the time limits of
ORS 742.504(12)(a)(B) by formally instituting arbitration
proceedings must explicitly offer to arbitrate or demand
arbitration to expressly begin that process. Where, as here,
a party's consent to arbitrate is contingent on some future

---

[4] The trial court stated, correctly, that the court must focus on defendant's con-
duct and its legal effect, not on defendant's intent and whether defendant might
have intended to comply with one particular statute rather than another:

"If I conclude that [the] insurance company initiated formal arbitration
proceedings, it may not matter whether they intended to or not.

"[T]here are often unintended legal consequences of people's conduct, and
they may have intended to begin a process, to use a term that's not in the stat-
ute, under another statute for purposes [of] cutting off attorney fees and unwit-
tingly have satisfied another statute."

The legislature, in my view, should consider the effect of the majority's conclu-
sion on both ORS 742.504(12)(a)(B) and ORS 742.061. The implication of the major-
ity's reasoning is that the standard operating procedure that defendant's claims
representatives have followed for many years to consent to arbitration under ORS
742.061(3)(b) may be legally insufficient, thus exposing defendant to unanticipated
claims for attorney fees. In my view, the legislature could not have intended to
require a party to use magic words or phrases to effectively consent to arbitration.
The legislature may wish to make clear that consenting to arbitration can be
accomplished by any written communication that in substance commits the party
to arbitration.

event and that party does not expressly advise or acknowledge to the other party that that event has occurred, no 'formal institution' of arbitration proceedings has occurred."

*Id.* at 163-64 (footnote omitted).

I agree with the trial court and the majority that a party's written offer or consent to arbitration serves to formally institute arbitration proceedings under ORS 742.504(12)(a)(B). Where no agreement to arbitrate exists, the parties have no authority to present any claims to an arbitrator, and no administrative structure (such as a civil court system) exists to receive complaints or demands for relief by any party. Consequently, the only practical step that a party may take in this context is to notify the other party in writing that the initiating party consents, demands, offers, or otherwise commits to participate in arbitration over the dispute. That step is the formal institution of arbitration proceedings; that first step toward arbitration will lead to binding arbitration of the dispute if the other party also consents.

The majority, however, falls into error in concluding that defendant's correspondence was too indefinite to offer or consent to arbitration. Defendant's first letter contained an unambiguous consent to arbitration of the UIM dispute, but the consent was subject to a condition: that there be a disagreement on the "liability/damages owed by the underinsured motorist." The second letter, described by Ms. Barton in her testimony, confirmed defendant's position that plaintiff already had been fully compensated for his injuries through the other driver's insurance policy.

In my view, the only permissible legal construction of defendant's two letters is that defendant's consent to arbitration became unconditional and, thus, legally effective. The second letter stated, in legal effect, that the alleged underinsured motorist had no further liability, and owed no additional damages, to plaintiff and, thus, plaintiff was not entitled to any UIM benefits from defendant. That message fully satisfied the condition stated in the first letter. It is of no legal consequence that defendant's claims representative expressed defendant's consent to arbitration in two letters rather than one, or that the second letter did not state in express terms that the condition set out in the first letter was

satisfied. The majority's conclusion that that sort of additional particular message is essential in this context simply embroiders the statute with a requirement that has no basis in the terms of ORS 742.504(12)(a)(B). It is also inconsequential that the second letter from the claims representative offered to consider additional information about plaintiff's injuries. That statement did nothing to alter the legal effect of the second letter: the condition of "disagreement" set out in the first letter was satisfied, because, in defendant's opinion, plaintiff had been fully compensated by other insurance and was entitled to no UIM benefits from defendant. The existence of a disagreement between the parties became obvious and, thus, the conditional consent to arbitration expressed in the first letter became unconditional.

The trial court correctly determined that defendant consented to arbitration. The majority errs in overturning the trial court's judgment.

I dissent.

De Muniz, C. J., joins in this dissenting opinion.