Argued and submitted June 26, 2012, reversed and remanded May 15, 2013

Craig F. PATON,
*Plaintiff-Appellant*,
*v.*

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
*Defendant-Respondent*.
Multnomah County Circuit Court
100100486; A148220

302 P3d 1204

Michael N. Gutzler argued the cause and filed the brief for appellant.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were Lindahl Law Firm, PC, and Gretchen L. Mandekor and Mandekor Lewis, LLC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Under ORS 742.504(12)(a), a plaintiff's under-insured motorist (UIM) claim against an insurer does not accrue unless at least one of the events specified in ORS 742.504(12)(a)(A) to (D) occurs within two years from the date of the accident.[1] As relevant here, one of those events that can lead to claim accrual is that "[t]he insured or the insurer has formally instituted arbitration proceedings[.]" ORS 742.504(12)(a)(B). The issue in this case is whether defendant, an insurer, "formally instituted" arbitration proceedings within two years of the accident such that plaintiff's UIM claim against defendant accrued. The trial court concluded that defendant's letter to plaintiff's attorney stating, in part, that defendant "hereby consents to submit this case to binding arbitration" did not "formally institute" arbitration proceedings and, on that basis, concluded that plaintiff's claim was barred by ORS 742.504(12)(a). Plaintiff appeals the resulting judgment entered in favor of defendant, arguing that, under the Supreme Court's decision in *Bonds v. Farmers Ins. Co.*, 349 Or 152, 240 P3d 1086 (2010), the trial court erred in concluding that defendant had not "formally instituted" arbitration proceedings. We agree with plaintiff and, accordingly, reverse and remand.

The relevant facts are undisputed. Plaintiff claims that he was injured in an automobile accident caused by an underinsured motorist on December 29, 2007. At the time of the accident, plaintiff was insured under an automobile policy with defendant that included UIM coverage. Shortly before December 29, 2009—the two-year anniversary of the accident—defendant sent plaintiff's attorney a letter that stated, in part:

> "Pursuant to ORS 742.061, [defendant] accepts coverage and agrees that the only issues are the liability of the uninsured/underinsured motorist and the damages due

---

[1] ORS 742.504 has been amended several times since the accident that gave rise to plaintiff's underinsured motorist claim. However, because those amendments do not affect our analysis, we refer to the current version of the statute throughout this opinion.

your client.[2] *[Defendant] hereby consents to submit this case to binding arbitration."*

(Emphasis added.)

On January 11, 2010, plaintiff filed a UIM claim against defendant. In response, defendant moved for summary judgment on the ground that plaintiff's claim was barred under ORS 742.504(12)(a), which provides:

"The parties to this coverage agree that no cause of action shall accrue to the insured under this coverage unless within two years from the date of the accident:

"(A) Agreement as to the amount due under the policy has been concluded;

"(B) *The insured or the insurer has formally instituted arbitration proceedings;*

"(C) The insured has filed an action against the insurer; or

"(D) Suit for bodily injury has been filed against the uninsured motorist and, within two years from the date of settlement or final judgment against the uninsured motorist, the insured has formally instituted arbitration proceedings or filed an action against the insurer."[3]

---

[2] Under ORS 742.061(3), an insurer insulates itself from the possibility of owing attorney fees to a plaintiff in relation to the plaintiff's claim for uninsured or underinsured motorist benefits

"if, in writing, not later than six months from the date proof of loss is filed with the insurer[,] [t]he insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and [t]he insurer has consented to submit the case to binding arbitration."

Defendant argues that, in stating that it "hereby consents to submit this case to binding arbitration," it intended only to utilize the safe harbor provision in ORS 742.061(3) to insulate itself from possible liability for plaintiff's attorney fees, and that that intent is dispositive as to whether defendant "formally instituted" arbitration proceedings under ORS 742.504(12)(a)(B). We disagree. Defendant's intent is immaterial to whether its statement to plaintiff had the legal effect of "formally institut[ing]" arbitration proceedings under the statute.

[3] Together, the provisions of ORS 742.504(1) to (12) constitute a model policy as to UIM coverage. *Vega v. Farmers Ins. Co.*, 323 Or 291, 301-02, 918 P2d 95 (1996). That is, insurers are required to include in their UIM policies "coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the *** provisions [of ORS 742.504(1) to (12)] were set forth in the policy." ORS 742.504. In this case, defendant incorporated the provisions of ORS 742.504(12)(a) in its contract with plaintiff. Where the terms of ORS

(Emphasis added.) Plaintiff then moved for partial summary judgment, arguing that defendant's letter "consent[ing] to submit this case to binding arbitration" had "formally instituted" arbitration proceedings under ORS 742.504(12)(a)(B) within the required two-year period so that the claim accrued.

The trial court concluded that defendant's letter was merely "a consent to arbitrate and not a formal initiation of arbitration" and that, accordingly, plaintiff's claim had not timely accrued. On that basis, it granted defendant's motion for summary judgment, denied plaintiff's motion for partial summary judgment, and entered a general judgment in defendant's favor.

Plaintiff appeals, contending that, under *Bonds*, the trial court erred in concluding that defendant's letter "consent[ing] to submit this case to binding arbitration" had not "formally instituted" arbitration proceedings within the meaning of ORS 742.504(12)(a)(B). Defendant, also relying on *Bonds*, responds that the court correctly concluded that defendant did not "formally institute" arbitration proceedings by making that written statement.

In *Bonds*, the Supreme Court held that, to "formally institute" arbitration proceedings under ORS 742.504(12)(a)(B),

> "an insured or insurer expressly must communicate to the other party that the initiating party is beginning the process of arbitrating the dispute. The first step in that process is the party's offer to utilize the arbitration process. Thus, to 'formally institute' arbitration proceedings, an insured or an insurer must expressly communicate to the other party that the initiating party offers to arbitrate or otherwise commits to the arbitration process."

349 Or at 162. The court further noted that, "when a party begins arbitration, the party will do so in an obvious and express way, such as occurs when a party sets forth, either in one document or in multiple documents that are part of a single message, a notice, offer, or demand for arbitration." *Id.* at 162-63.

---

742.504(12)(a) are incorporated in parties' contracts, the terms of that model policy are operative. *Bonds*, 349 Or at 156 n 3.

The court then considered whether two letters written by the defendant, an insurer, to the plaintiff regarding the plaintiff's UIM claim met that standard. In doing so, the court described those letters as follows:

> "The first letter acknowledged plaintiff's UIM claim and stated, 'Should we disagree on the liability/damages owed by the underinsured motorist, [defendant] consents to submit this matter to binding arbitration.' The second letter stated that defendant disagreed about the extent of the damages owed—in particular, the representative stated that plaintiff already had been compensated for his injuries through the other driver's insurance coverage—and that plaintiff was not entitled to UIM benefits. The representative offered, however, to consider additional information about plaintiff's alleged injuries. Both letters likely arrived on the same day."

*Id.* at 154 (footnote omitted; brackets in original). The court noted that "[t]he first letter indicated a willingness to arbitrate, depending on whether a future event—disagreement—occurred. The second letter did not definitively state that a disagreement existed, nor did it mention arbitration." *Id.* at 163 (footnote omitted). On that basis, the court concluded that, "[w]here, as here, a party's consent to arbitrate is contingent on some future event and that party does not expressly advise or acknowledge to the other party that that event has occurred, no 'formal institution' of arbitration proceedings has occurred." *Id.* at 164.

Plaintiff argues that defendant's letter "consent[ing] to submit this case to binding arbitration" is the type of express communication exhibiting a party's willingness to commit to arbitration that "formally institutes" arbitration proceedings under *Bonds*. Defendant responds that a "consent"—even one that is not contingent on a future event—can never "formally institute" arbitration proceedings. That is so because, in defendant's view, the Supreme Court in *Bonds* limited the formal institution of arbitration proceedings to those instances where a party provides "a notice, offer, or demand for arbitration," and a party's "consent" to arbitrate is not "a notice, offer, or demand."

We read *Bonds* to implicitly hold that a party's express "consent" to arbitration suffices to "formally institute" arbitration proceedings under ORS 742.504(12)(a)(B) in circumstances where that consent is not made explicitly contingent on a future event. Contrary to defendant's assertions, the Supreme Court's holding in *Bonds* was not predicated on a conclusion that a party's "consent" to arbitration—as opposed to a party's "notice, offer, or demand for arbitration"—can never "formally institute" arbitration proceedings. Rather, as noted, the Supreme Court held that, "[w]here, as here, *a party's consent to arbitrate is contingent on some future event and that party does not expressly advise or acknowledge to the other party that that event has occurred*, no 'formal institution' of arbitration proceedings has occurred." 349 Or at 164 (emphasis added). That is, the court in *Bonds* held that the defendant's letters did not suffice to "formally institute" arbitration proceedings because *the consent given in the first letter was explicitly conditional and the condition was never satisfied*. Had the court concluded that "consent"—contingent or not—can never "formally institute" arbitration proceedings under ORS 742.504(12)(a)(B), it would have had no reason to consider and decide whether the condition governing the defendant's consent was satisfied. Thus, the court implicitly concluded that a party's *unconditional* consent to arbitration is sufficient to "formally institute" arbitration proceedings under the statute.[4]

---

[4] Notably, the dissent in *Bonds* characterizes the majority's holding in the same manner that we do:

"The majority, after consulting dictionary definitions of 'formally' and 'institute,' concludes that, to formally institute arbitration proceedings under ORS 742.504(12)(a)(B), 'an insured or insurer must expressly communicate to the other party that the initiating party offers to arbitrate or otherwise commits to the arbitration process.' *The majority thus accepts the trial court's premise that, in this context, an offer or a consent to arbitrate constitutes a formal institution of arbitration proceedings.* However, the majority reasons that defendant's second letter was insufficient to convey defendant's offer to arbitrate because it did not expressly state that the condition stated in the first letter had been satisfied[.]"

349 Or at 168 (Durham, J., dissenting) (citation omitted; emphasis added). Although the dissent agreed "with the *** majority that a party's written offer or consent to arbitration serves to formally institute arbitration proceedings under ORS 742.504(12)(a)(B)," it concluded, contrary to the majority's holding, that the defendant's second letter "fully satisfied the condition stated in the first letter," rendering the consent unconditional. *Id.* at 169. On that basis, the dissent concluded that the

As noted, in this case, defendant sent plaintiff's attorney a letter stating that defendant "hereby consents to submit this case to binding arbitration." Although we recognize that every offer or consent to arbitrate is necessarily implicitly contingent on the existence of *some point of dispute* between the parties, the court in *Bonds* based its holding on the fact that the defendant's consent was made *explicitly* contingent on the occurrence of a future event—disagreement between the parties on the issues of liability or damages. Here, in contrast, defendant's consent was not made *explicitly* contingent on the occurrence of any future event. Accordingly, in so consenting, defendant took the "first step" toward the arbitration process. *Bonds*, 349 Or at 162. That is, it "expressly communicate[d]" to plaintiff that it was "committ[ed] to the arbitration process." *Id*. On that basis, we conclude that, under *Bonds*, defendant "formally instituted" arbitration proceedings within the requisite two-year period under ORS 742.504(12)(a)(B), and plaintiff's UIM claim was therefore not barred by that statute. The trial court erred in concluding otherwise.

Reversed and remanded.

---

defendant had "formally instituted" arbitration proceedings under the statute. *Id*. at 170.